Roberto MUÑOZ ARILL,
et al., Plaintiffs,

v.

Ramon MAIZ, et al., Defendants.

No. 96–1725 (JP).

United States District Court,
D. Puerto Rico.

Jan. 7, 1998.

Jorge Miguel Suro Ballester, San Juan, PR, for plaintiffs.

William Vázquez Irizarry, Federal Litigation Div., Dept. of Justice, San Juan, PR, for defendants.

## OPINION AND ORDER

PIERAS, District Judge.

### I. INTRODUCTION AND BACKGROUND

The Court has before it defendants' Motion Requesting Dismissal (**docket No. 14**) and plaintiffs' Opposition thereto (**docket No. 18**).

For the reasons set forth below, the motion to dismiss is hereby **DENIED.**

Plaintiffs Roberto Muñoz Arill, Laura Rebeca Ayoroa Santaliz, and José Norat Ramírez (collectively, "the plaintiffs"), own and reside on real estate located on Road 8176 in Cupey Alto, San Juan, Puerto Rico. They bring this action under 42 U.S.C. § 1983, claiming that the defendants have violated and conspired to violate their constitutional rights while acting under color of state law. The defendants are Carley Educational Center, Inc. ("Carley"), a corporation engaged in the operation of a day care center; Leyda Rosa Plasencia Cortés ("Plasencia") and Carmen Celia Muñiz Miranda ("Muñiz"), shareholders, directors and officers of codefendant Carley; Ramón Maíz ("Maíz"), the Director of Puerto Rico's Administración de Reglamentos y Permisos ("ARPE") [1]; and Antonio Rosa Agosto ("Rosa"), the Director of the San Juan Regional Office of ARPE. Specifically, the plaintiffs assert that the defendants violated their constitutional rights when ARPE granted a Use Permit to Carley, allowing Carley to operate a children's day care center in the immediate vicinity of plaintiffs' properties, without considering the plaintiffs' request for intervention. The following facts derive from the plaintiffs' complaint:

1. On June 9, 1995, defendants Plasencia and Muñiz, on behalf of Carley, filed a petition with ARPE for a permit to operate a day-care center on property across from the plaintiffs' property.[2]

2. On July 5, 1995, the plaintiffs filed a request with ARPE to intervene in the administrative proceedings related to Carley's application. The request was addressed to codefendant Rosa, Director of the San Juan Regional Office of ARPE.

3. On July 7, 1995, the defendants who are petitioning a permit reiterated their petition for the issuance of the permit in a letter to co-defendant Maíz, Administrator of ARPE.

4. On July 9, 1995, realizing that ARPE had not yet considered their July 5 request for intervention, the plaintiffs sent a second letter to ARPE asking to intervene.

5. On July 20, 1995, ARPE issued a preliminary report recommending the granting of the Use Permit to Carley, without having considered the plaintiffs' request for intervention. The permit was subsequently issued on August 30, 1995.

6. On September 26, 1995, the plaintiffs appealed ARPE's decision to the Junta de Apelaciones de Construcciones y Lotificaciones ("Board of Appeals").

7. On November 7, 1995, a status conference was held by order of the Board of Appeals, where ARPE admitted it had not considered plaintiffs' requests before granting Carley's Use Permit.

8. On November 27, 1995, Plasencia and Muñiz began operating the Carley Educational Center, Inc. day care center.

9. On November 30, 1995, the plaintiffs filed motions in the Superior Court of Puerto Rico, San Juan Part asking for a temporary restraining order, a preliminary injunction, and/or a permanent injunction. On December 6, 1995, the Superior Court denied plaintiffs' motion, finding that the plaintiffs had failed to exhaust their administrative remedies.

10. On December 15, 1995, plaintiffs filed a motion with the Board of Appeals requesting that the Use Permit be stayed.

11. On January 10, 1996, the Board found that ARPE had not considered the plaintiffs' request before granting the permit, and vacated ARPE's decision retroactive to July 5, 1995. The Board remanded the case back to ARPE, with specific instructions to consider plaintiffs' original request.

---

1. ARPE was created to coordinate and watch over fulfillment of planning regulations and to grant permits in compliance with those regulations. *See* P.R.Laws Ann. tit. 23 § 30a–54 (1987).

2. Although it is not clear whether the day care center was located across the street from plaintiffs' properties or directly next to them, we will assume for now that the day care center was located in the immediate vicinity of plaintiffs' properties.

12. On February 6, 1996, plaintiffs again requested from ARPE a stay of the Use Permit since the defendants continued to operate the center in violation of the order of the Board of Appeals.

13. On March 14, 1996, plaintiffs filed a second motion for a preliminary and permanent injunction, as well as a restraining order, with the Superior Court of Puerto Rico, San Juan Part, because of ARPE's lack of action regarding the matter.

14. On April 2, 1996, the Superior Court found that ARPE had violated its own regulations by not considering plaintiffs' request for intervention, and that consequently, plaintiffs' Due Process rights had been violated when their request was not considered prior to the issuance of the permit. The Court accordingly issued the injunction, revoked the Use Permit, and ordered the defendants to cease operations of the day care center while the plaintiffs' original request was being considered by ARPE.[3]

From the plaintiffs' complaint the Court can construe the two following claims under 42 U.S.C. § 1983: (1) that the defendants' actions deprived the plaintiffs of a property interest in the quiet use and enjoyment of their real property in violation of the plaintiffs. Fifth and/or Fourteenth Amendment[4] right to due process and (2) that the defendants' actions constituted a taking under the Fifth and/or Fourteenth Amendments for which just compensation is due.[5] Defendants Maiz and Rosa now move the Court under Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the plaintiffs' complaint for failure to state a claim upon which relief can be granted.

## II. STANDARD

When addressing a motion to dismiss brought under Rule 12(b)(6), a Court must "accept as true all well-pleaded factual averments and indulge all reasonable inferences in the plaintiff's favor." *Doyle v. Hasbro, Inc.*, 103 F.3d 186, 190 (1st Cir.1996). Dismissal under Rule 12(b)(6) is "appropriate if the facts alleged, taken as true, do not justify recovery." *Id.* The standard is not quite as feeble as first appears:

> The pleading requirement ... is not 'a toothless tiger.' [citations omitted]. The threshold for stating a claim may be low, but it is real. [citations omitted]. In order to survive a motion to dismiss, plaintiffs must set forth factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery. [citations omitted]. Although all inferences must be made in the plaintiffs' favor, this Court need not accept 'bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like.' [citations omitted].

*Id.* To put it simply, the Court must look leniently at the allegations in the plaintiffs' complaint and determine if those allegations "can reasonably admit of a claim." *Id.*

## III. ANALYSIS

 Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law,

---

**3.** Although not discussed in the complaint, Carley apparently ceased operations as a result of this order. *See* Loraine Blasor, "Rift of Child Care Center Heats Up," San Juan Star, April 2, 1997, at 3. Also, on August 13, 1996, codefendants Plasencia and Muñiz appealed the decision of the Superior Court. Their appeal is still pending. *See* Civil No. KLCE 96–00582 (Sup.Ct. San Juan part).

**4.** The Supreme Court has never determined whether the due process clause applies to Puerto Rico via the Fifth or Fourteenth Amendment.

The Court need not address the issue, because the analysis will be the same in either case. *Santana v. Collazo*, 714 F.2d 1172, 1174 n. 1 (1st Cir.1983).

**5.** The Fifth Amendment's Takings Clause applies to Puerto Rico, but whether its application is direct or through the Fourteenth Amendment is not clear. Again, the Court need not address the issue, because the result will be the same in either case. *See generally Culebras Enterprises Corp. v. Rivera Rios*, 813 F.2d 506 (1st Cir.1987).

suit in equity, or other proper proceedings for redress.

42 U.S.C.A. § 1983 (West 1994). Congress enacted § 1983 to create a remedy in favor of those who are deprived of the rights, privileges or immunities granted to them by the Constitution or laws of the United States. *Blessing v. Freestone,* 520 U.S. 329, 117 S.Ct. 1353, 1359, 137 L.Ed.2d 569 (1997). To make a valid claim under § 1983, the plaintiffs must prove (1) the defendants were acting under color of state law, and (2) deprived them of rights, privileges, or immunities secured to them by the Constitution or laws of the United States. 42 U.S.C. § 1983; *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981).

## A. UNDER COLOR OF STATE LAW

■ The plaintiffs bring this action against two government officials and three private defendants (two real persons and a corporation). The plaintiffs' complaint sufficiently alleges that the two government officials, Maíz and Rosa, were acting under color of state law when they engaged in the conduct that forms the basis of this action. With respect to the non-governmental defendants, Plasencia, Muñiz, and Carley, the Supreme Court has established that private parties can be held liable in a § 1983 claim. However, it is considerably more difficult to state a claim under § 1983 against such defendants because private persons can only act under color of state law in specific circumstances:

> To act under color of state law for § 1983 purposes does not require that the defendant be an officer of the state. It is enough that he is a willful participant in a joint action with the state or its agents. Private persons, jointly engaged with state officials in the challenged action, are acting "under color" of law for purposes of § 1983 actions.

*Dennis v. Sparks,* 449 U.S. 24, 27–28, 101 S.Ct. 183, 66 L.Ed.2d 185 (1980); *see also Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 152, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Glaros v. Perse,* 628 F.2d 679, 685 (1st Cir. 1980); *Tauvar v. Bar Harbor Congregation of the Jehovah's Witnesses, Inc.,* 633 F.Supp. 741, 746 (D.Maine 1985) (Cyr, J.). Thus, although private persons can be sued under § 1983, plaintiffs can only bring such actions where the private defendant has engaged in a conspiracy with state officials. Moreover, "in an effort to control frivolous conspiracy suits under § 1983, federal courts have come to insist that the complaint state with specificity the facts that, in the plaintiff's mind, show the existence and scope of the alleged conspiracy ... complaints cannot survive a motion to dismiss if they contain conclusory allegations of conspiracy but do not support their claims with references to material facts." *Slotnick v. Staviskey,* 560 F.2d 31, 33 (1st Cir.1977). In other words, bare conclusory allegations of conspiracy are insufficient, and a complaint must "plead in some detail, through reference to material facts, the relationship or nature of the cooperation between the state actors and the private individuals." *Tauvar,* 633 F.Supp. at 746.

■ In the case at bar, the plaintiffs allege:

> "codefendants Plasencia and Muñiz conspired with codefendants Maíz and Rosa to deprive plaintiffs of their civil and constitutional rights under the Constitution and laws of the United States and the Commonwealth of Puerto Rico, and/or received significant assistance and/or benefits from the acts and/or omissions of Maiz and Rosa complained of herein" ... [and] "Codefendants Maiz and Rosa, together with codefendants Carley, Plasencia, and Muñiz, who conspired among themselves to deprive plaintiffs of their civil and constitutional rights and/or who received significant assistance and/or benefits from the acts and omissions of Maíz and Rosa, are liable to plaintiffs."

These claims allege material facts from which the inference can be drawn that all defendants acted in unison manipulating the permitting procedures under the control of Maiz and Rosa. Such manipulation effectuated a denial of the protections of the Bill of Rights and of due process in particular. The Bill of Rights is the religion of the United States, including Puerto Rico, and the law the sword of the angels for protecting it. This denial as alleged is so essentially contrary to our cul-

ture which essence is the concept of the freedom of the individual as well as the protection of his natural and civil rights as embodied in the Bill of Rights of the United States Constitution that for the purpose of the motion to dismiss such allegations can only mean that the action taken by the defendants could not have been taken unless taken intentionally with the intention of violating plaintiffs' rights under the Constitution by means of a conspiracy. That suffices to defeat the defendant's motion for dismissal, and the Court holds that the plaintiffs' allegations are sufficiently particular to support a claim of conspiracy under *Tauvar* and *Slotnick.*[6]

## B. DEPRIVATION OF RIGHTS

### 1. Due Process

■ The Due Process clause of the Fifth and Fourteenth Amendments forbid any state from "depriv[ing] any person of life, liberty, or property without due process of ·law." To prevail in a § 1983 action alleging deprivation of procedural due process, a plaintiff must prove "that the conduct complained of deprived the plaintiff of a cognizable property interest," *see Parratt,* 451 U.S. at 535; *Lowe v. Scott,* 959 F.2d 323, 334 (1st Cir.1992), without due process.

■ The plaintiffs allege that ARPE's grant of the Use Permit served to strip them of a cognizable property interest in the quiet use and enjoyment of their real property.[7] In order to prevail on this claim, the plain-

tiffs will be forced to prove (1) that the defendants deprived them of some measure of the quiet use and enjoyment of their property; (2) that they had a cognizable property interest in that measure of quiet use and enjoyment; and (3) that the deprivation was worked without due process.

Accepting the plaintiffs' allegations as true, the Court cannot hold as a matter of law that the alleged operation of the day care center did not in any way affect the plaintiffs's quiet use and enjoyment of their property. The traffic jams, noise, gas emissions, and blockades that the plaintiffs allege resulted from the operation of the day care center are not negligible interferences with the quiet use and enjoyment of one's residential property. The fact that the alleged deprivation may have been temporary does not change the Court's holding.

The plaintiffs have also successfully alleged the second prong of the due process analysis—that they had a cognizable property interest in that which they claim to have been deprived of, i.e., a street which is residential in nature and so classified by law and consequently, free from the perturbance occasion by the operation of a day care center. At this stage of the proceedings, the Court must accept the plaintiffs allegations as true, and we cannot hold as a matter of law that they do not have a claim of entitlement to live on a street that is strictly residential in nature, without more automobiles, parking problems, noise, and emissions, and not to

---

6. Although neither Plasencia nor Muñiz nor Carley filed motions to dismiss, the actual movants addressed the issue of whether the plaintiffs' complaint made out a valid claim of a conspiracy. *See* Def's Mot. to Dismiss, p. 7 ¶ 6.

7. The complaint also alleges that the plaintiffs were deprived of their statutory right to be heard. However, statutorily provided procedural rights cannot stand as property interests for the purpose of the due process. *Doe v. Milwaukee County,* 903 F.2d 499 (7th Cir.1990). In *Doe,* the Court held:

> one cannot have a "property interest" ... in mere procedures because "[p]rocess is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a claim of entitlement ... The State may choose to require procedures for reasons other than protection against deprivation of substantive rights, of course, but in making that choice the State does not create an inde-

pendent substantive right." *Olim v. Wakinekona,* 461 U.S. 238, 250–251, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983); [additional citations omitted]. Courts have observed the confusion that would result from elevating a state-mandated procedure to the status of a constitutionally protected property interest. *See, e.g., Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 541, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985) ("The categories of substance and process are distinct. Were the rule otherwise, the Clause would be reduced to a mere tautology."); *Shango v. Jurich,* 681 F.2d 1091, 1101 (7th Cir.1982) ("Constitutionalizing every state procedural right would stand any due process analysis on its head.") 903 F.2d at 503. Therefore, the only due process violation the plaintiffs' complaint can successfully allege is based on a property interest in the quiet use and enjoyment of their real property.

have such activities reduce the value of their property. The Court cannot hold that they do not have a right not to have a safe community which the operation of commercial educational establishments would impinge upon, requiring the Plaintiffs to spend additional money on costly safety measures. The Court holds that the complaint fully alleges a § 1983 claim for deprivation of due process.

■ Finally, the plaintiffs have successfully alleged that they were deprived of their property interest without due process. According to the plaintiffs, ARPE did not provide them with any process at all. The only process they allegedly afforded was appellate review by the board of appeals. In *Mathews v. Eldridge*, the Supreme Court provided guidance for determining what process is due when the government deprives someone of a property interest:

> Due process is not a technical conception with a fixed content unrelated to time, place and circumstances. [citations omitted]. Due process is flexible and calls for such procedural protections as the particular situation demands. [citations omitted]. Accordingly resolution of the issue whether the administrative procedures provided here are constitutionally sufficient requires analysis of the governmental and private interests that are affected. [citations omitted]... the specific dictates of due process generally requires consideration of three distinct factors: first, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). At this point in the proceedings, the Court cannot determine, as a matter of law, that the process the plaintiffs were allegedly given—essentially appellate review by the Board of Appeals—was sufficient to satisfy *Mathews v. Eldridge*. In sum, the plaintiffs have successfully claimed that defendants Rosa and Maíz, acting under color of state law, violated the plaintiffs' constitutional right to due process.

Before moving on, the Court would like to express its concern with ARPE's alleged actions, which the Court finds exemplify the dangerous philosophy, which seems to have become endemic in government agencies and among employees that run them, that ours is a government of men and not laws. Government appointments often provide individuals such as codefendants Maíz and Rosa with a great deal of power to shape the environment and impact the rights of the citizens governed in part by the agencies for whom such individuals work. In order to structure and limit the power that such appointed officials wield over the citizens they govern, the legislature—a body duly elected by the people and the only one that can govern—establishes a legal regime that spells out in detail the procedures to which such officials must adhere. Too often, government agencies and employees, either convinced of the excellence of their own views and ideas or overly concerned with efficiency, forget or refuse to consider the voices of those whom their decisions most greatly affect. That is precisely why the legislature, in deference to the people, establishes the rules under which agencies such as ARPE must function—because such rules ensure that the people, as a whole, benefit from ARPE's work. At the core of the rules under which agencies must operate is the notion of due process. As Justice Harlan wrote:

> Perhaps no characteristic of an organized and cohesive society is more fundamental than its erection and enforcement of a system of rules defining the various rights and duties of its members, enabling them to govern their affairs and definitively settle their differences in an orderly, predictable manner. Without such a legal system, social organization and cohesion are virtually impossible; with the ability to seek regularized resolution of conflicts individuals are capable of interdependent action that enables them to strive for achievements without the anxieties that would beset them in a disorganized society. Put more succinctly, it is this injection of

the rule of law that allows society to reap the benefits of rejecting what political theorists call the "state of nature."

*Boddie,* 401 U.S. at 374. Justice Harlan's observations echo the sentiments expressed by many before him. For example, Justice Frankfurter wrote in *Joint Anti-Fascist Refugee Committee v. McGrath:*

> Man being what he is cannot safely be trusted with complete immunity from outward responsibility in depriving others of their rights. At least such is the conviction underlying our Bill of Rights. That a conclusion satisfies one's private conscience does not attest its reliability. The validity and moral authority of a conclusion largely depends on the mode by which it was reached. Secrecy is not congenial to truth-seeking and self righteousness gives too slender an assurance of rightness. No better instrument has been devised for arriving at truth than to give a person in jeopardy of serious loss notice of the case against him and opportunity to meet it. Nor has a better way been found for generating the feeling, so important to a popular government, that justice has been done.[8]

341 U.S. 123, 171–172, 71 S.Ct. 624, 95 L.Ed. 817 (1951).

Justices Frankfurter and Harlan spoke of due process in general terms, but the concept of giving people a voice perhaps has no stronger application than to the "fourth branch" of our governments—the administrative agencies. As federal and local governments in this country have undertaken ever increasing responsibility for regulating the day-to-day activities of their citizens, elected officials have delegated correspondingly greater amounts of both legislative and adjudicatory authority to executive and "independent" agencies specializing in particular facets of government. Although the constitutionality of such delegations has been upheld, *see Interstate Commerce Comm'n v. Cincinnati, New Orleans & Texas Pacific Ry.,* 167 U.S. 479, 494, 17 S.Ct. 896, 42 L.Ed. 243 (1897) (Congress can delegate legislative

power to "subordinate tribunal") *Yakus v. United States,* 321 U.S. 414, 64 S.Ct. 660, 88 L.Ed. 834 (1944) (Congress can delegate legislative power to executive agency or official if Congress shall lay down by legislative act an intelligible principal to which the official or agency must conform); *Crowell v. Benson,* 285 U.S. 22, 52 S.Ct. 285, 76 L.Ed. 598 (1932) (power to adjudicate factual matters and to make reviewable legal rulings may be vested in agencies), not everyone has agreed that such delegations are legitimate. *See* Freedman, *Crisis and Legitimacy in the Administrative Process,* 27 Stan.L.Rev. 1041 (1975). Criticisms of the power and questions of the legitimacy of administrative agencies are most frequently based on the concept of separation of powers:

> It has been a fundamental element of separation of powers doctrine as developed by Locke and Montesquieu and refined by Madison that governmental intrusions on private liberty be authorized by general rules formulated by a politically responsible group of officials separate from the officials responsible for executing the rules.

Stephen G. Breyer & Richard B. Stewart, *Administrative Law and Regulatory Policy,* 41 (2d ed.1985). Enough has been written about the dubiousness of the concentration of power in politically unresponsive administrative agencies that the Court need not canvass all of the arguments and issues involved. The point is simply this—ARPE officials are not elected to office, and thus are not responsive to the will of the people, and yet they have been delegated tremendous power by the legislature to impose upon the lives of Puerto Rico residents. Therefore, allegations that they have transgressed the bounds of their delegated powers and thereby denied due process to anyone are serious allegations indeed.

According to the allegations, the Defendants issued a permit in violation of the Plaintiffs' right to due process. Faced with the loss of that right, most citizens, for lack of funds or simply despairing of any ability to

---

**8.** "In a government like ours, entirely popular, care should be taken in every part of the system, not only to do right, but to satisfy the community that right is done." 5 The Writings and Speeches of Daniel Webster, 163.

face down the "all powerful" government, would give in. That inability or unwillingness to fight governmental usurpation of rights breeds corruption—officials become secure in their ability to circumvent due process with impunity.[9] Therefore, the Court must confront such allegations, when given the opportunity.

The Executive Branch has a particularly great responsibility to protect the individual freedoms and rights that form the backbone of United States Constitution and the basis of American culture in contrast with the culture prevailing up to recently in many Latin American countries which are now becoming democracies. United States citizens residing in Puerto Rico are heirs to the Bill of Rights, having lived for one hundred years now in association with and as part of the United States.

### 2. Fifth Amendment

■ The Fifth Amendment of the Constitution provides that the government may not take private property for public use without providing just compensation. U.S. Const. amend. V. The prohibition against takings without compensation encompasses two distinct types of takings: physical and regulatory. *Yee v. City of Escondido, CA,* 503 U.S. 519, 522–523, 112 S.Ct. 1522, 118 L.Ed.2d 153 (1992). Thus, in order to state a claim for a taking under the Fifth Amendment, a landowner must prove either that "the government [has authorized] a physical occupation of [her] property (or actually takes title)," *Yee v. City of Escondido,* 503 U.S. 519, 522, 112 S.Ct. 1522, 118 L.Ed.2d 153 (1992); *Loretto v. Teleprompter Manhattan CATV Corp.,* 458 U.S. 419, 426, 102 S.Ct. 3164, 73 L.Ed.2d 868 (1982), or that a government regulation "goes too far" in "redefin[ing] the range of interests included in the ownership of property" and/or qualifying the "uses of private property." *Lucas v. South Carolina Coastal Council,* 505 U.S. 1003, 1014, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992). The plaintiffs allege that the granting of the Use Permit constituted a regulatory taking.

■ In bringing a claim for a regulatory taking, a plaintiff must establish both that a taking was affected and that she "sought compensation through the procedures the State has provided for doing so." *Suitum v. Tahoe Reg'l Planning Agency,* —— U.S. ——, 117 S.Ct. 1659, 1665, 137 L.Ed.2d 980 (1997). A sub-requirement of the first element—i.e., that a taking has been worked—is that the plaintiff "has received a final decision regarding the application of the challenged regulations to the property at issue from the government entity charged with implementing the regulations." *Id.* Whether the plaintiffs' allegations support a conclusion that a final decision regarding the Use Permit is doubtful because the Board of Appeals vacated the Use Permit. However, because even temporary takings "are compensable under the Takings Clause," *Lucas,* 505 U.S. at 1011–1012; *see also First English Evangelical Lutheran Church of Glendale v. County of Los Angeles,* 482 U.S. 304, 107 S.Ct. 2378, 96 L.Ed.2d 250 (1987), and because the Use Permit allowed Carley to operate for several months, the Court will accept for the purposes of this motion that the plaintiff's pleadings are sufficient with respect to the requirement that the agency's decision be final.

The Court need not concern itself too much with whether granting the Use Permit worked a taking, because the inquiry is one of fact. As the plaintiffs have alleged that the Use Permit worked a taking of their property, the complaint is sufficient with respect to the first prong of the Takings Clause analysis.

■ The Court turns to the second element of a successful takings claim. Before an action for a Fifth Amendment taking will lie, the plaintiffs must have sought compensation through the mechanisms that the State has available for doing so. *Suitum,* —— U.S. at ——, 117 S.Ct. at 1665; *Williamson County Regional Planning Comm'n v.*

9. "I wished my wife to be not so much as suspected." Julius Caesar, from Plutarch, *Lives,* Caesar § 10 (translated into the traditional saying: "Caesar's wife must be above suspicion."). ARPE must act always in accordance with the law or it will provoke the negative perception that the concession of exemptions and variations are "for sale" and that if the price is right ARPE would approve just about anything.

*Hamilton Bank of Johnson City,* 473 U.S. 172, 195, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985); *Culebras Enterprises Corp. v. Rivera Rios,* 813 F.2d 506 (1st Cir.1987); *Asociacion de Pescadores de Vieques, Inc. v. Santiago,* 747 F.Supp. 134 (D.P.R.1990).

[This rule] stems from the Fifth Amendment proviso that only takings 'without just compensation' infringe that Amendment; 'if a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and has been denied just compensation.'

*Suitum,* —— U.S. at ——, 117 S.Ct. at 1664. Although neither the Puerto Rico Code nor Puerto Rico case law expressly provides for an inverse condemnation remedy, the Puerto Rico Supreme Court has on several occasions implied that Puerto Rico law would recognize such a remedy. *Culebras Enterprises,* 813 F.2d at 512–514 (citing *Heftler Int'l, Inc. v. Planning Bd.,* 99 P.R.R. 454, 460 (1970); *Commonwealth v. Northeastern Constr. Co.,* 103 D.P.R. 377, 383–384 (1975); *Planta De Cal Hicaco v. Tribunal Superior,* 103 D.P.R. 385, 388, 1975 WL 38848 (1975); *Sucesion De Ana Maria Garcia v. Autoridad De Carreteras,* 114 D.P.R. 676, 1983 WL 204167 (1983)). A successful claim for damages for a taking requires the claimant to "avail himself of the remedies guaranteed by state law or prove that the remedies are inadequate." *Culebras Enterprises,* 813 F.2d at 515 (citing *Hudson v. Palmer,* 468 U.S. 517, 529, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984)). Although the plaintiffs in the case at bar have not specifically alleged that the Commonwealth's remedies are inadequate, the Court can draw that inference from the complaint. Whether the plaintiffs attempted to utilize any remedies provided by the Commonwealth is a factual matter, and as the Court cannot consider evidence in addressing the motion before it, the Court must find that the plaintiff's complaint satisfactorily alleges that the Commonwealth's remedy is inadequate. Therefore, the plaintiffs' allegations state a valid claim for a regulatory taking. The Court hereby **DENIES** the defendants' motion to dismiss the plaintiffs' Fifth Amendment claim.

## IV. CONCLUSION

Based on the results of our analysis, the Court concludes that the complaint states a claim against all defendants for violations of the Takings and Due Process Clauses of the Constitution, and the Court hereby **DENIES** the defendant's motion to dismiss those claims.

IT IS SO ORDERED.