**WEHRAN–PUERTO RICO, INC., Plaintiff,**

v.

**MUNICIPALITY OF ARECIBO, et al., Defendants.**

**No. Civ. 99–1216 HL.**

United States District Court, D. Puerto Rico.

July 6, 2000.

Maria S. Kortright–Soler, San Juan, PR, Victoria A. Ferrer–Kerber, San Juan, PR, for Wehran Puerto Rico, Inc., plaintiff.

Eliezer Aldarondo–Ortiz, Eduardo R. Estrella, Claudio Aliff–Ortiz, Aldarondo & Lopez Bras, Hato Rey, PR, for Municipality of Arecibo, Angel M. Roman–Velez, Elena Mocoroa–De–Roman, defendant.

## OPINION AND ORDER

LAFFITTE, Chief Judge.

Before the Court is a motion for summary judgment filed by Defendants the Municipality of Arecibo, its mayor Ángel Román Vélez ("Román"), his wife Elena

Mocoroa, and their conjugal partnership (collectively "Defendants") in this action brought pursuant to section 1983.[1] Plaintiff Wehran–Puerto Rico, Inc., is a Puerto Rico corporation. It brings this action for money damages, alleging that Defendants violated its right to free speech under the First Amendment and its due process rights under the Fourteenth Amendment. It also brings claims under Puerto Rico contract law, pursuant to the Court's supplemental jurisdiction.[2]

The Court reviews the record in the light most favorable to Wehran and draws all reasonable inferences in its favor. *See LeBlanc v. Great American Ins. Co.*, 6 F.3d 836, 841 (1st Cir.1993). In April 1994, the Municipality contracted Wehran to administer the town's landfill.[3] In May 1998, the contract was amended and the Municipality took over the day-to-day operations of the landfill; prior to this amendment, Atlantic Waste System, Inc. had been operating it. Under this amendment, Wehran's monthly fees were reduced from $90,000 to $40,000. Wehran provided technical supervision and monitored the landfill's compliance with environmental laws and regulations. As such, Wehran was responsible for informing the Municipality of any potential violations of these laws.[4]

The record indicates that the landfill has had a history of problems. In January 1996, Wehran, through its general manager Jaime Jaén, sent a letter to Román informing him of deficiencies in the operation of the landfill. These problems included a lack of equipment; inadequate control of lixiviating liquids; failure to cover waste with back fill, resulting in an excessive amount of uncovered waste; poorly transitable roads within the fill;

and improper control of erosion, standing water, and sediments. Wehran further informed Román that it had met with officials from the Environmental Quality Board ("EQB") and the Solid Waste Management Authority; that these officials had toured the fill; and that they were disturbed by the fill's problems. Wehran informed Román that the fill was in a critical situation and that it was imperative that the Municipality meet with Atlantic Waste to ensure that these problems be remedied.[5]

There has been a steady stream of communications on these themes. In November 1996, Wehran wrote a letter to the EQB on behalf of the Municipality. In the letter, Wehran referred to a meeting it had with EQB officials to discuss the Municipality's compliance plan and the fill's operational deficiencies. Wehran informed the EQB that Atlantic Waste had taken some corrective measures, but that the company lacked adequate equipment and personnel.[6] In August 1997, Wehran wrote to Román. Román had written Wehran regarding a letter he had received from the EQB pointing out deficiencies in the fill's operation and giving the Municipality thirty days to correct the problems. In its response, Wehran informed Román that the deficiencies highlighted by the EQB—lack of heavy equipment, failure to cover waste, lack of control of lixiviates, erosion—were the responsibility of Atlantic Waste. Wehran also informed Román that it had scheduled a meeting with the EQB to discuss possible means of compliance.[7] One week later Wehran and Atlantic Waste wrote jointly to the EQB on behalf of the Municipality. In the letter they addressed a corrective plan that the EQB had de-

1. 42 U.S.C.A. § 1983 (West Supp.2000).

2. 28 U.S.C.A. § 1367 (West 1993).

3. Docket no. 15, exhibit 4 of exhibit C; docket no. 26, exhibit 1.

4. Docket no. 15, exhibit A; docket no. 26, exhibit 1.

5. Docket no. 15, attachment 1 to exhibit A.

6. Docket no. 15, attachment 2 to exhibit A.

7. Docket no. 15, attachment 3 to exhibit A.

vised for the fill and explained the measures that were being taken to comply with the plan. They asked the EQB for an additional thirty days to bring the fill into compliance.[8]

In May 1998 the Municipality took over as the fill's operator. During the first week after this transition, Wehran wrote Román to inform him that the fill had approximately 1,000 tons of uncovered and uncompacted waste. Wehran warned that the EQB might be inspecting the fill some time soon; that its condition could be found to be in violation of a number of EQB regulations; and that the Municipality risked being fined for these transgressions. Additionally, the improper operation of the fill created a malodorous situation and threatened to be a breeding ground for flies. Wehran urged the Municipality to take steps before the situation became an environmental emergency.[9] Four days later, Wehran again wrote to Román informing him that there had been a fire at the fill; that there were five acres of exposed and uncompacted waste; that there continued to be a problem with the odors and flies; and that this constituted an emergency situation. Wehran recommended that the Municipality immediately contract additional heavy equipment to compact the waste and purchase 3,000 cubic meters of fill to cover it.[10]

The EQB subsequently expressed its concerns to Wehran and the Municipality regarding the fill. In June 1998, the Municipality's city administrator and Wehran met with EQB officials to avoid any fines or penalties. As a result of these negotiations, a compliance plan which Wehran had prepared was agreed upon for the Municipality.[11] By August 1998, however, the Municipality had not complied with this plan. Wehran wrote to Román to inform him that there were approximately eight acres, or 9,000 tons, of uncompacted and uncovered garbage at the fill; that there was a shortage of heavy equipment to handle this waste; and that there continued to be a problem with odors, flies, and potential public health risks. Wehran warned that the Municipality risked being fined for violating EQB regulations and urged that action be taken to prevent the situation from becoming an environmental emergency.[12] In September 1998, the EQB entered a cease and desist order against the Municipality and proposed a $25,000 fine for violation of environmental laws at the fill.[13]

In January 1999, Jaén took aerial photographs of the fill and showed them to Román and other officials of the Municipality. On February 2, 1999, the EQB inspected the fill. The Wehran employee who accompanied an EQB official on the inspection told them that the Municipality had not compacted waste for the last two weeks, that it had not covered waste for over a month, and that the Municipality could not handle this problem. The EQB official indicated that he would refer the case to his agency's legal department. That same day, Jaén informed the Municipality's city administrator and other officials about the EQB visit and about the comments the Wehran employee had made to the EQB.[14]

On February 5, 1999, Jaén took more aerial photographs of the fill and showed them to Román. Jaén told him that the fill's situation was getting worse and that the Municipality was in violation of the law. Wehran also sent Román a confidential memorandum on February 5, 1999, in which it pointed out that there were now

8. Docket no. 15, attachment 4 to exhibit A.

9. Docket no. 15, attachment 5 to exhibit A.

10. Docket no. 15, attachment 6 to exhibit A.

11. Docket no. 26, exhibit 1.

12. Docket no. 15, attachment 7 to exhibit A; docket no. 26, exhibit 1.

13. Docket no. 26, exhibit 1.

14. Docket no. 26, exhibit 1.

20 acres of uncompacted garbage, that there were 25,000 tons of uncovered garbage, that a bulldozer used for the compacting was not working, and that there continued to be a problem with odors and flies. The memorandum further informed Román that the Municipality risked fines for being in violation of EQB regulations and that the EQB official who had visited the site was referring the case to his legal division.[15] On February 8, an official from the Solid Waste Management Authority inspected the landfill. A Wehran employee informed the official of the problems that the Municipality was having. Jaén told Municipality officials about what transpired during this inspection.[16]

On February 16, 1999, Wehran received a letter from Román informing the company that, due to the inefficient operation and administration of the landfill and due to the Municipality's financial situation, Wehran's contract was being terminated effective immediately.[17] Wehran claims that it had no indication prior to receiving this letter that the Municipality was considering terminating the contract.[18]

Wehran claims that the contract was terminated in retaliation for its speaking out on the landfill's condition. In their motion for summary judgment, Defendants claim that Wehran's speech on this subject was not constitutionally protected and that the contract was terminated for purely financial reasons. Defendants argue that therefore there was no First Amendment violation and that Wehran suffered no due process violation either. They also claim that Román is entitled to qualified immunity and that the claim against his wife should be dismissed. For the reasons set forth below, the Court grants in part and denies in part the motion for summary judgment.

**15.** Docket no. 26, exhibits 1 & 2.

**16.** Docket no. 26, exhibit 1.

## DISCUSSION

Summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." *See* Fed.R.Civ.P. 56(c). The party moving for summary judgment bears the initial responsibility of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Once the moving party has satisfied this requirement, the nonmoving party has the burden of presenting any facts that demonstrate a genuine issue for trial. Fed.R.Civ.P. 56(e); *LeBlanc,* 6 F.3d at 841. The nonmovant must do more than show "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). An issue is genuine when, based on the evidence, a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252, 106 S.Ct. at 2512.

### 1. First Amendment claim

A claim under section 1983 has two essential elements: (1) the conduct complained of must have been committed under color of state law, and (2) the conduct must have worked a denial of rights that are protected by the Constitution or laws of the United States. *Martinez v. Colon,* 54 F.3d 980, 984 (1st Cir.1995). With regard to the first element, the parties do not dispute that Defendants acted under color of state law. The second element has two aspects: (i) there must have been a deprivation of federal rights and (ii)

**17.** Docket no. 26, exhibit 3.

**18.** Docket no. 26, exhibit 1.

there must have been a causal connection between the conduct complained of and the deprivation of rights. *Gutierrez–Rodriguez v. Cartagena*, 882 F.2d 553, 559 (1st Cir.1989); *Voutour v. Vitale*, 761 F.2d 812, 819 (1st Cir.1985).

■■■ Wehran claims that Defendants' conduct violated his First Amendment rights. In the case of government employees, an individual does not lose his First Amendment rights merely because he is a government employee. *Tang v. Rhode Island*, 163 F.3d 7, 11 (1st Cir.1998); *Guilloty Perez v. Fuentes Agostini*, 37 F.Supp.2d 103, 108 (D.Puerto Rico 1999). A government employee's claim that the government, acting as an employer, violated his First Amendment rights is analyzed with a three-part balancing test. *See Padilla–Garcia v. Rodriguez*, 212 F.3d 69, 78 (1st Cir.2000); *Hennessy v. City of Melrose*, 194 F.3d 237, 245–46 (1st Cir.1999); *Tang*, 163 F.3d at 12; *O'Connor v. Steeves*, 994 F.2d 905, 912–13 (1st Cir.1993). Government contractors are entitled to the same type of balancing. *Bd. of County Comm'rs, Wabaunsee County v. Umbehr*, 518 U.S. 668, 685, 116 S.Ct. 2342, 2352, 135 L.Ed.2d 843 (1996). In *Umbehr*, the Supreme Court outlined the standard for reviewing the First Amendment claims of government contractors as follows:

> To prevail, [a plaintiff] must show that the termination of his contract was motivated by his speech on a matter of public concern, an initial showing that requires him to prove more than the mere fact that he criticized the [government] before [it] terminated him. If he can make that showing, the [government] will have a valid defense if it can show, by a preponderance of the evidence, that, in light of [its] knowledge, perceptions, and policies at the time of the termination, the [government] would have terminated the contract regardless of his speech. The [government] will also prevail if it can persuade the District Court that the [government's] legitimate interests as contractor, deferen-

tially viewed, outweigh the free speech interests at stake.

*Id.* at 685, 116 S.Ct. at 2352 (internal citation omitted). In making this analysis, a court should grant deference to the government's reasonable evaluations of its interest as a contractor. *Id.* at 678, 116 S.Ct. at 2349. In the spectrum of First Amendment interests, government contractors "lie somewhere between the case of government employees" and other individuals with "less close relationships with the government." *Id.* at 680, 116 S.Ct. at 2350. For an independent contractor case, both the speaker's and the government's interests will generally—but not always—be less strong. *Id.* at 684, 116 S.Ct. at 2352.

■■■ At the first part of this analysis, the plaintiff must show that the termination of the contract was motivated by the contractor's speech on a matter of public interest. *Id.* at 685, 116 S.Ct. at 2352. The question of what is a matter of public interest is a legal, not a factual, determination. *Hennessy*, 194 F.3d at 246; *Burnham v. Ianni*, 119 F.3d 668, 679 (8th Cir.1997). In determining whether a topic was a matter of public concern, a court must determine, based on the form, context, and content of the speech, as indicated by the whole record, whether the contractor was speaking as a citizen upon a matter of public concern, or merely upon a topic of personal interest. *Connick v. Myers*, 461 U.S. 138, 147–48, 103 S.Ct. 1684, 1690, 75 L.Ed.2d 708 (1983); *O'Connor*, 994 F.2d at 912. If the issue is a personal matter and not one of public concern, the contract termination will generally not be subject to challenge in federal court. *Connick*, 461 U.S. at 147, 103 S.Ct. at 1690; *O'Connor*, 994 F.2d at 912. Speech dealing with the government's mismanagement or lack of compliance with regulations is a matter of public concern. *See Padilla–Garcia*, 212 F.3d at 79; *Moran v. Washington*, 147 F.3d 839, 849 (9th Cir.1998); *Chappel v. Montgomery County Fire Protection*, 131 F.3d 564, 576 (6th

Cir.1997); *Propst v. Bitzer*, 39 F.3d 148, 152 (7th Cir.1994); *O'Connor*, 994 F.2d at 915; *Conaway v. Smith*, 853 F.2d 789, 796 (10th Cir.1988); *Guilloty Perez*, 37 F.Supp.2d at 109.

■ In the present case, Wehran claims it was terminated because of its speech on the alleged operational deficiencies that the Municipality was having with its landfill. This speech has to do with allegations of the Municipality's alleged mismanagement and failure to comply with environmental laws. These are issues of public concern. Moreover, the adequacy of a landfill is a question of public health. Thus, Wehran's speech was a matter of public concern. *See Padilla–Garcia*, 212 F.3d at 79; *Moran*, 147 F.3d at 849; *Chappel*, 131 F.3d at 576; *Propst*, 39 F.3d at 152; *O'Connor*, 994 F.2d at 915; *Conaway*, 853 F.2d at 796; *Guilloty Perez*, 37 F.Supp.2d at 109; *cf. Mid–American Waste v. City of Gary, Ind.*, 49 F.3d 286, 291 (7th Cir.1995) (Noting that waste disposal is a highly regulated industry).

■ Defendants argue that because Wehran communicated to Román and other officials of the Municipality in private, this communication was a private matter and not one of public concern. A plaintiff's use of private channels to make expressions will not preclude the expression from being considered a matter of public concern. *Rankin v. McPherson*, 483 U.S. 378, 386 n. 11, 107 S.Ct. 2891, 2898 n. 11, 97 L.Ed.2d 315 (1987); *Givhan v. Western Line Consolidated Sch. Dist.*, 439 U.S. 410, 415–16, 99 S.Ct. 693, 696–97, 58 L.Ed.2d 619 (1979); *Lee v. Nicholl*, 197 F.3d 1291,

1295–96 (10th Cir.1999) (Internal memo on traffic safety and snow removal, although addressed only to employee's supervisors, held to be on a matter of public concern); *Dill v. City of Edmond, OK*, 155 F.3d 1193, 1202 (10th Cir.1998); *Schultea v. Wood*, 27 F.3d 1112, 1119 (5th Cir.1994); *Conaway*, 853 F.2d at 797; *see also Hennessy*, 194 F.3d at 242–43, 246 (Comments made in one-on-one private conversations with a co-worker and with a supervisor were considered to be on matters of public concern); *O'Connor*, 994 F.2d at 917 n. 10 (A government employee may be acting responsibly by taking steps to minimize disruption by limiting dissemination of his comments to the public officials most directly involved). Thus, the fact that Wehran's communications were made privately or through confidential memoranda does not prevent them from being expressions on matters of public concern.[19]

■ In addition to showing that its speech was on a matter of public concern, Wehran must also show that the contract's termination was motivated by the speech on this matter. *See Umbehr*, 518 U.S. at 685, 116 S.Ct. at 2352; *Mt. Healthy City Sch. Dist. v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977). Circumstantial evidence may be sufficient to make this showing. *See Padilla–Garcia*, 212 F.3d at 75–76; *Anthony v. Sundlun*, 952 F.2d 603, 605 (1st Cir.1991). Close chronological order between a plaintiff's protected speech and a defendant's alleged retaliatory conduct may warrant an inference of retaliation. *See Ferranti v. Moran*, 618 F.2d 888, 892 (1st Cir.1980); *Mc-*

---

**19.** Defendants argue that Wehran did not intend that its communication be a matter of public concern and that the memorandum of February 5, 1999, was merely part of regular discourse over the parties' contract. Some courts have considered a speaker's intent in determining whether the expression constitutes a matter of public concern. *See Davis v. Ector County, Tex.*, 40 F.3d 777, 780 (5th Cir.1994); *Breuer v. Hart*, 909 F.2d 1035, 1038–39 (7th Cir.1990); *see also O'Connor*, 994 F.2d at 913 n. 4. The First Circuit has explained, however, that when the topic is

"clearly a legitimate matter of *inherent* concern to the electorate," the court need not inquire into the speaker's motives. *See O'Connor*, 994 F.2d at 913–14 (emphasis in original). An inquiry into the speaker's subjective intent may be appropriate when the topic, on the basis of the expression's content alone, is not a matter of inherent public concern. *Id.* at 914. In the present case, because the landfill's condition is a topic of inherently public concern, an analysis into Wehran's intent is not necessary.

*Donald v. Hall,* 610 F.2d 16, 18 (1st Cir. 1979); *Guilloty Perez,* 37 F.Supp.2d at 111.

 In the present case, there is evidence that in early February a Wehran employee told an EQB official that the landfill was facing serious problems and that the Municipality could not handle these problems; that Wehran informed the Municipality both orally and in writing about the landfill's condition; and that Jaén personally told Municipality officials about the landfill's problems and about the Wehran employee's comments to the EQB official. The evidence further indicates that approximately one week later, the Municipality terminated its contract with Wehran. The timing of the termination of the contract, following closely upon Wehran's expressions on the landfill's condition, is sufficient to raise an inference that the termination was done in retaliation for Wehran's exercising of its First Amendment rights. Thus, there is a genuine issue of fact that as to whether the contract's termination was motivated by Wehran's speech.

 Even when a plaintiff can show that the termination of his contract was motivated by his speech on a matter of public concern, the state actor will have a valid defense if it can show by a preponderance of the evidence that, in light of its policies and knowledge at the time of the termination, the contract would have been terminated regardless of the speech. *Umbehr,* 518 U.S. at 685, 116 S.Ct. at 2352; *Mt. Healthy,* 429 U.S. at 287, 97 S.Ct. at 576. In the present case Defendants are unable to successfully make this showing. The thrust of their argument on this point is that the contract with Wehran was terminated because the Municipality was suffering financial hardship and that the landfill did not generate enough funds to pay

Wehran's fees. They have submitted the statements of Román and the city administrator in support of this assertion.[20] These statements constitute evidence that the Municipality would have terminated Wehran's contract regardless of its speech on the landfill.

In response, Wehran has adduced evidence that the landfill did generate enough funds to cover its expenses.[21] Moreover, in his deposition, Román testified that prior to cancelling the contract, he discussed this issue with the city administrator, the director of finance, and the municipal clerk.[22] The director of finance, however, stated in her deposition that she did not participate in the decision to terminate Wehran's contract, that no one ever discussed with her the Municipality's financial problems in general, and that she was unaware of problems in being able to pay Wehran.[23] The municipal clerk also contradicted Román's testimony; she testified that she was unaware of why the contract was terminated.[24] The evidence adduced by Wehran is sufficient to create a genuine issue of fact as to whether the Municipality actually terminated the contract for economic reasons. Accordingly, there is a genuine issue as to whether the contract would have been terminated regardless of Wehran's speech.

 A state actor has a second line of defense in these cases. It may also prevail if it can show that its legitimate interests as contractor outweigh the free speech interests of the plaintiff. *Umbehr,* 518 U.S. at 685, 116 S.Ct. at 2352; *Pickering v. Bd. of Educ. of Township High Sch.,* 391 U.S. 563, 568, 88 S.Ct. 1731, 1734–35, 20 L.Ed.2d 811 (1968). The court must balance the interests of the plaintiff's speech against the government's interests in avoiding disruptions and inefficiencies in its operations. *O'Connor,* 994 F.2d at 915;

20. Docket no. 15, exhibits A & B.

21. Docket no. 26, exhibits 1 & 10.

22. Docket no. 26, exhibit 8, at 67–68.

23. Docket no. 26, exhibit 9, at 39, 59–60, 63.

24. Docket no. 26, exhibit 6, at 65.

*Guilloty Perez,* 37 F.Supp.2d at 110. In the present case, Defendants have not availed themselves of this defense in their motion for summary judgment. Thus, at this stage it is unnecessary to balance Wehran's free speech interests against the Municipality's interest in avoiding disruptions and inefficiencies.

In conclusion, Wehran speech concerned a matter of public concern; there is sufficient evidence to infer a causal link between the speech and the termination; and there is a genuine issue of fact as to Defendants' proffered reason that the contract was terminated for economic reasons. There is a genuine issue as to the motivation for the termination of the contract. Thus, the Court denies the motion for summary judgment on Wehran's First Amendment claim.

### 2. Qualified immunity

Defendants argue that Román is entitled· to qualified immunity. The qualified immunity doctrine protects state officials from civil liability under section 1983 so long as their conduct does not violate a clearly established constitutional right of which a reasonable official would have been cognizant. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *Ringuette v. City of Fall River,* 146 F.3d 1, 5 (1st Cir.1998). A state actor claiming qualified immunity must do so either under a theory that the asserted constitutional right was not clearly established or under the theory that his conduct satisfies the test of objective legal reasonableness. *Camilo–Robles v. Hoyos,* 151 F.3d 1, 5–6 (1st Cir.1998). The question in this analysis is not whether the right is clearly established at a highly abstract level; rather, the question is whether, under the circumstances at hand, a reasonable officer would understand that his conduct was violating a constitutional right. *Berthiaume v. Caron,* 142 F.3d 12, 15 (1st Cir.1998). This test is purely an objective one. *Crawford–El v. Britton,* 523 U.S. 574, 587–91, 118 S.Ct. 1584, 1591–

93, 140 L.Ed.2d 759 (1998); *Brown v. Ives,* 129 F.3d 209, 211 (1st Cir.1997).

It has long been clearly established that government action taken in retaliation for an individual's exercise of his First Amendment rights is a constitutional violation. *See Crawford–El,* 523 U.S. at 592–93, 118 S.Ct. at 1594; *Mt. Healthy,* 429 U.S. at 283–84, 97 S.Ct. at 574; *Ferranti,* 618 F.2d at 892 n. 4; *McDonald,* 610 F.2d at 18. Additionally, it is clearly established that the government may not terminate an independent contractor in retaliation for the contractor's exercise of its First Amendment rights. *El Dia, Inc. v. Rossello,* 165 F.3d 106, 110 (1st Cir.1999). In the present case, there are factual issues as to Román's motives for terminating the contract with Wehran. Defendants have adduced evidence to show that the motivation for the termination was purely economic. Wehran has presented evidence to show that there was a retaliatory motivation behind the termination. The qualified immunity standard is an objective one. *Crawford–El,* 523 U.S. at 587–91, 118 S.Ct. at 1591–93. However, granting qualified immunity at the summary judgment stage may not be appropriate where there is a factual issue as to an essential element of the plaintiff's claim. *Swain v. Spinney,* 117 F.3d 1, 10 (1st Cir.1997). An essential element to Wehran's First Amendment claim is whether there was a retaliatory motive for the termination of the contract. In part 1., above, of this opinion and order, the Court denied Defendants' motion for summary judgment on the merits because there is a factual issue as to Román's motive. Because of this same factual issue, the Court also denies the request for qualified immunity.

### 3. Due process claim

#### Procedural due process

Wehran also claims that the termination of the contract violated its substantive and procedural due process

rights.[25] A court's initial inquiry in a due process claim is to determine whether the plaintiff has been deprived of a protected property or liberty interest. *Am. Mfr. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 59, 119 S.Ct. 977, 989, 143 L.Ed.2d 130 (1999); *Hennessy,* 194 F.3d at 249. In the case before the Court, Wehran claims that its contract gave it a property interest. Property interests entitled to constitutional protection are generally defined by extra-constitutional sources such as state law. *Bd. of Regents of State Colleges v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972); *Correa–Martinez v. Arrillaga–Belendez,* 903 F.2d 49, 53 (1st Cir.1990). In *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), a companion case to *Roth,* the Supreme Court held that the concept of property "denotes a broad range of interests that are secured by 'existing rules or understandings.'" 408 U.S. at 601, 92 S.Ct. at 2699 (quoting *Roth,* 408 U.S. at 577, 92 S.Ct. at 2709). Thus, a written contract with the government may create a property interest. *Perry,* 408 U.S. at 601, 92 S.Ct. at 2699.

▮ Notwithstanding the Supreme Court's expansive language in *Perry* and *Roth* regarding what constitutes property, the lower courts have been hesitant to find that every government contract is, by itself, sufficient to create a protected property interest. *See Mid–American Waste,* 49 F.3d at 289–90; *Linan–Faye Constr. Co. v. Hous. Auth. of City of Camden,* 49 F.3d 915, 931–32 (3rd Cir. 1995); *S & D Maintenance Co. v. Goldin,* 844 F.2d 962, 965–69 (2nd Cir.1988); *San Bernardino Physicians' Services Med. Group v. County of San Bernardino,* 825 F.2d 1404, 1407–10 (9th Cir.1987). Courts have found a property interest arising out of a contract only when the contract con-

fers a special status such as employment or an entitlement to welfare payments. *See S & D Maintenance,* 844 F.2d at 966–67; *San Bernardino,* 825 F.2d at 1408–09. Commercial contracts, however, will generally not create a property interest. *S & D Maintenance,* 844 F.2d at 966–67 ("An interest in enforcement of an ordinary commercial contract with a state is qualitatively different from the interests the Supreme Court has thus far viewed as 'property' entitled to procedural due process protection."); *San Bernardino,* 825 F.2d at 1409–10 ("[T]he farther the purely contractual claim is from an interest as central to the individual as employment, the more difficult it is to extend it constitutional protection without subsuming the entire state law of public contracts.").

The First Circuit has been similarly reluctant to find due process violations in breach of contract claims against the government. *See Boston Envtl. Sanitation Inspectors Ass'n v. City of Boston,* 794 F.2d 12, 13 (1st Cir.1986) (per curiam); *Cloutier v. Town of Epping,* 714 F.2d 1184, 1191 n. 4 (1st Cir.1983); *Arena Del Rio, Inc. v. Gonzalez,* 704 F.2d 27, 28 (1st Cir. 1983) (per curiam); *Casey v. Depetrillo,* 697 F.2d 22, 23 (1st Cir.1983) (per curiam); *Jimenez v. Almodovar,* 650 F.2d 363, 370 (1st Cir.1981) ("A mere breach of contractual right is not a deprivation of property without constitutional due process of law."); *Bleeker v. Dukakis,* 665 F.2d 401, 403 (1st Cir.1981). The proper remedy for a plaintiff is a state law suit for breach of contract. *Bleeker,* 665 F.2d at 403.

This aversion by the courts to permit due process claims for an alleged breach of contract is understandable. If every disgruntled government contractor were allowed to allege a constitutional violation for perceived breaches by the government,

---

**25.** It has not yet been decided whether due process requirements apply to Puerto Rico under the Fifth or Fourteenth Amendment. *See Tenoco Oil Co. v. Dep't of Consumer Affairs,* 876 F.2d 1013, 1017 n. 9 (1st Cir.1989); *Santana v. Collazo,* 714 F.2d 1172, 1174 n. 1 (1st Cir.1983); *Munoz Arill v. Maiz,* 992 F.Supp. 112, 115 n. 4 (D.P.R.1998). The Court need not resolve this issue, as the analysis is the same under either amendment. *See Santana,* 714 F.2d at 1174 n. 1; *Munoz Arill,* 992 F.Supp. at 115 n. 4.

the federal courts would be awash in state law contract claims. *Linan–Faye,* 49 F.3d at 932; *Christ Gatzonis Elec. v. New York City Sch. Constr. Auth.,* 23 F.3d 636, 641 (2nd Cir.1994); *Ezekwo v. NYC Health & Hospitals Corp.,* 940 F.2d 775, 782 (2nd Cir.1991); *Reich v. Beharry,* 883 F.2d 239, 242 (3rd Cir.1989). Just as the Fourteenth Amendment should not be a " 'font of tort law,' " *see Daniels v. Williams,* 474 U.S. 327, 332, 106 S.Ct. 662, 665, 88 L.Ed.2d 662 (1986) (quoting *Paul v. Davis,* 424 U.S. 693, 701, 96 S.Ct. 1155, 1160, 47 L.Ed.2d 405 (1976)), neither should it be a font of contract law.

■ In the present case, Wehran entered into what appeared to be a garden variety commercial contract to provide the Municipality of Arecibo with services related to the landfill. Wehran has proffered no reason—and the Court cannot conceive of one—to justify a holding that the contract created a protectable property interest or that Wehran otherwise has a viable procedural due process claim for the alleged breach by the Municipality. Therefore, the procedural due process claim is dismissed.

*b. Substantive due process*

■ Wehran also claims that it has suffered a substantive due process violation. A plaintiff may bring a substantive due process claim under one of two theories; he must show either (1) that he was deprived of an identifiable property or liberty interest protected under the Fourteenth Amendment or (2) that the state's action shocks the conscience. *Cruz–Erazo v. Rivera–Montanez,* 212 F.3d 617, 621–22 (1st Cir.2000). As discussed above, Wehran does not have a protectable property interest. Thus, it must show that Defendants' conduct was shocking to the conscience. Conduct which meets this standard includes state action which is "arbitrary and capricious;" which runs counter to concepts of ordered liberty; which appears in context "shocking or violative of universal standards of decency;"

or which is egregiously unacceptable or outrageous. *Id.* (quoting *Amsden v. Moran,* 904 F.2d 748, 753–54 (1st Cir.1990) (internal quotations omitted)). The conduct complained of must be more than merely offensive to " 'fastidious squeamishness or private sentimentalism.' " *Pittsley v. Warish,* 927 F.2d 3, 7 (1st Cir. 1991) (quoting *Rochin v. California,* 342 U.S. 165, 172, 72 S.Ct. 205, 209, 96 L.Ed. 183 (1952)).

■ In the present case, Wehran has adduced facts which may make out a case that the Municipality's termination of the contract constituted a breach. Even if all of Wehran's allegations and evidence are ultimately found to be credible by the factfinder, the scenario which Wehran has painted is not so egregious or conscience-shocking as to constitute a substantive due process violation. Thus, the Court dismisses this claim. *Cf. Mid–American Waste,* 49 F.3d at 290–92 (Contract dispute between municipality and company contracted to operate landfill did not give rise to a substantive due process claim); *El Dia, Inc. v. Rossello,* 20 F.Supp.2d 296, 307–08 (D.P.R.1998), *aff'd* 165 F.3d 106 (1st Cir.1999) (State actor terminating government contractor was entitled to qualified immunity on substantive due process claim).

*4. Puerto Rico law claims*

■ Wehran also brings claims under Puerto Rico contract law, pursuant to the Court's supplemental jurisdiction. The determination whether to exercise supplemental jurisdiction over local law claims is left to the broad discretion of the district court. *Vera–Lozano v. Int'l Broadcasting,* 50 F.3d 67, 70 (1st Cir. 1995). A district court may decline to exercise supplemental jurisdiction if a claim raises a novel or complex issue of state law, the claim substantially predominates over the federal question claims, or there are other exceptional circumstances which constitute compelling reasons to decline jurisdiction. 28 U.S.C.A. § 1367(c).

The Court finds that the circumstances of the present case justify a decision to decline to hear the local law claims. Wehran's federal law claim involves a three-part test which involves a shifting of burdens and a balancing of interests to determine whether First Amendment rights have been violated. This is a complicated test which, by itself, will not necessarily be clear and straightforward for a jury to follow. The inclusion of the contract claims would inject yet another factor into this already complicated test, substantially increasing the risk of confusion to the jury. Moreover, these contract law claims would require an extensive analysis of the terms of the contract and the parties' alleged compliance with it. This focus on the issue of breach could substantially predominate over the First Amendment claims. Lastly, it appears that Defendants' defense to the contract law claims raises complex issues of Puerto Rico law.[26] Thus, the Court finds that, in the interest of clarity and justice, it should decline to hear the Puerto Rico law claims.[27] They are dismissed without prejudice.

### 5. Claims against Elena Mocoroa

■ Lastly, Plaintiff has also named Román's wife Elena Mocoroa and the couple's conjugal partnership as defendants. Defendants argue that there is no basis for a suit against Mocoroa. The Court agrees. The spouse of a state actor may not be held individually liable for the section 1983 claims of the state actor. *Lensel Lopez v. Cordero*, 659 F.Supp. 889, 891 (D.P.R. 1987). Although the inclusion of the couple's conjugal partnership as a defendant is appropriate, Mocoroa is not a proper defendant. *See id.* Accordingly, the Court dismisses her from this action.

26. Docket no. 15, exhibit G-1, para. 4.

27. The Court notes that any prejudice to Wehran is minimal, for a section 1983 plaintiff is entitled to the same general class of damages as is a breach of contract plaintiff. *Compare Memphis Community Sch. Dist. v. Stachura,* 477 U.S. 299, 307, 106 S.Ct. 2537, 2543, 91 L.Ed.2d 249 (1986) (Section 1983 damages

WHEREFORE, the Court grants in part and denies in part Defendants' motion for summary judgment (docket no. 15). Partial judgment shall be entered dismissing with prejudice Plaintiff's due process claims and all federal law claims against Elena Mocoroa. The Puerto Rico law claims shall be dismissed without prejudice.

**IT IS SO ORDERED.**

are intended to compensate plaintiff for the injuries suffered by the constitutional violation), *with Noble v. Corporacion Insular de Seguros,* 738 F.2d 51, 54 (1st Cir.1984) (Noting that breach of contract plaintiff could seek recovery for losses actually suffered and for lost profit).