RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 21a0226p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

GOLF VILLAGE NORTH, LLC; TRIANGLE PROPERTIES, INC.; GOLF VILLAGE PROPERTY OWNERS ASSOCIATION, INC.,

　　　　　　　　*Plaintiffs-Appellants*,

　　　*v.*

CITY OF POWELL, OHIO; DAVID BETZ, in his official capacity as Powell, Ohio's Director of Development,

　　　　　　　　*Defendants-Appellees*.

┐
│
│
│
│
│
│
├　No. 20-4117
│
│
│
│
│
│
┘

─────────────────

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 2:18-cv-00371—Michael H. Watson, District Judge.

Argued: July 22, 2021

Decided and Filed: September 23, 2021

Before: BOGGS, CLAY and KETHLEDGE, Circuit Judges.

─────────────────

## COUNSEL

**ARGUED:** Joseph R. Miller, VORYS, SATER, SEYMOUR & PEASE LLP, Columbus, Ohio, for Appellants. Yazan S. Ashrawi, FROST BROWN TODD LLC, Columbus, Ohio, for Appellees. **ON BRIEF:** Joseph R. Miller, Daniel E. Shuey, Christopher L. Ingram, Elizabeth S. Alexander, VORYS, SATER, SEYMOUR & PEASE LLP, Columbus, Ohio, for Appellants. Yazan S. Ashrawi, Jeremy M. Grayem, FROST BROWN TODD LLC, Columbus, Ohio, for Appellees.

———————————

**OPINION**

———————————

CLAY, Circuit Judge.  Plaintiffs Golf Village North, LLC; Triangle Properties, Inc.; and the Golf Village Property Owners Association, Inc. (collectively, "Plaintiffs" or "Golf Village") appeal the district court's dismissal of their amended complaint against the City of Powell, Ohio, and its Director of Development, David Betz, sued in his official capacity (collectively, "Defendants" or "the City").  The amended complaint asserted takings and procedural due process claims under 42 U.S.C. § 1983, as well as a trespass claim under state law.  The district court dismissed the federal causes of action with prejudice under Federal Rule of Civil Procedure 12(b)(6), declined to exercise supplemental jurisdiction over the state trespass claim, and entered judgment.  We **AFFIRM**.

**BACKGROUND**

**Factual Background**

Plaintiffs are three related entities that own, maintain, and administer approximately 900 acres of property in Delaware County, Ohio.  The property was acquired in the late 1990s to develop a planned community known as the Golf Village Community.  The Golf Village Community is located within the City of Powell.

This is not the first time these litigants have been before us.  Their prior appeal involved a zoning dispute. *See Golf Village N. LLC v. City of Powell*, 826 F. App'x 426 (6th Cir. 2020).  In this case, Golf Village claims that the City has taken its property without just compensation or due process by building an entrance to a new municipal park on Golf Village's private street system and refusing to appropriate certain private streets that the City intends the public to use to access the park.  Plaintiffs allege that the city has converted the private streets into public roads and that the resulting vast amounts of traffic will make it impossible for them to limit use of their still-private streets, as well as cause wear-and-tear damage to the roads.  Golf Village contends that the City's actions have diminished its right to exclude and its right to use and enjoy its property.

Referred to as "Subarea G," the portion of the Golf Village Community relevant to this case is a commercial development that has been divided into eleven separate parcels, one of which is directly owned by Golf Village. In a December 2003 document entitled "Supplemental Declaration of Private Roads, Related Maintenance Obligations, and Common Area Maintenance Obligations," Plaintiff Triangle Properties noted that it would be "beneficial for the prospective owners of all eleven parcels to be able to have use of the private roads . . . ." (Supplemental Declaration of Private Roads, Related Maintenance Obligations, and Common Area Maintenance Obligations, R. 57-3, Page ID #1199.) The Supplemental Declaration went on to state:

> Triangle hereby declares that each owner of the eleven parcels . . . , and the employees, customers, and invitees of any of the businesses to be located on any of the parcels, does hereby have a non exclusive permanent easement to use said private roads for pedestrian and automotive ingress and egress to and from Sawmill Parkway.

(*Id.*) While Triangle agreed to construct the private roads, "[t]he maintenance (including snow removal), repair and replacement of the private roads, shall be the sole obligation and expense of the owners of the parcels," including Golf Village. (*Id.*)

In September 2004, the City approved a final plat for the commercial development. The plat stated that the private roads would remain a private responsibility. On the other hand, the document indicated that a lot would be dedicated to the City at a later time to be used as a park. In May 2010, Triangle transferred that lot—approximately twenty-three acres of property—to the City for a municipal park.

Construction plans for "The Park at Seldom Seen" were proposed sometime in 2017 and approved by the City in early 2018. The below image, copied from an exhibit to Golf Village's complaint and as highlighted by the Court, shows the relationship between the commercial properties and the City's park as well as the roads at issue in this case:



(2017 Site Construction Plans, Am. Compl., Ex. A, R. 57-1, Page ID #1180.)[1]

As the plans above show, the private roads built by Plaintiffs were Market, Moreland, and Sheridan Streets. The plans also show that the entrance to the park is located slightly to the east of the intersection between Moreland and Sheridan Streets. The City's construction plans stated that "[a]pproval of these plans is contingent upon the city securing an access easement to the park from Seldom Road [sic] along Sheridan Street from the property owner." (*Id*.)

---

[1]The Court has highlighted portions of the image to assist the reader. The park is outlined in green, with the entrance to the park marked with a green diamond. Sheridan Street, a formerly private road, which became public during the pendency of these proceedings, is highlighted in blue. Sawmill Parkway and Seldom Seen Road, which have always been public and whose construction preceded Plaintiffs' development, are marked in orange. The private streets currently at issue in this case, Market Street and Moreland Street, are marked in yellow. The numbers in the image ranging from 3033 to 3154 refer to the parcel lot numbers, as designated in the final plat for the commercial development. (Final Plat, Am. Compl., Ex. B, R. 57-2, Page ID #1198.) The circled numbers refer to construction landmarks within the park.

In June 2017, the City contacted Golf Village to obtain an ingress/egress easement from Seldom Seen Road over Sheridan Street.  Golf Village refused.  Despite the fact that approval of the plans, by their own terms, required securing an easement along Sheridan Road, the City finalized the park construction plan without the easement in February 2018.  Moreover, in March 2018, the City told a construction contractor that "[t]he City of Powell has made arrangements for access . . . from Sheridan Street . . . ."  (Request for Information #: C-002, Am. Compl., Ex. G., R. 57-7, Page ID #1209.)  In April 2018, the City began using Market, Moreland, and Sheridan Streets without Golf Village's permission, physically removed a concrete curb on the east side of Sheridan Street, and built a large construction entrance.  This suit followed.

**Procedural Background**

Golf Village filed its original complaint on April 23, 2018, challenging the City's allegedly unlawful entry onto and destruction of Plaintiffs' property, as well the City's alleged planned conversion of Sheridan and Moreland Streets from private roads to public streets. (Compl., R. 1, Page ID #3.)  Along with the complaint, Golf Village filed a motion for a temporary restraining order, preliminary injunction, and permanent injunction.  The City consented to a sixty-day injunction "from accessing the City's public park property from Sheridan and Moreland Streets" (5-7-18 Order, R. 20, Page ID #380.), as well as from making any incursion onto certain other Golf Village property.  The parties later agreed to extend the injunction for thirty days.  The City informed the district court that it might initiate a "quick-take" eminent domain action under Ohio law, and the district court ordered the City to inform it if the City began those proceedings so that the district court could determine whether they rendered moot Golf Village's request for injunctive relief.

On August 9, 2018, the district court issued an opinion and order granting in part and denying in part Plaintiffs' request for injunctive relief.  Specifically, the district court granted Golf Village's request for a preliminary injunction, denied as moot its request for a temporary restraining order, and denied a permanent injunction.  The district court determined that there was a substantial likelihood that Plaintiffs would succeed on their claim that the City had trespassed on Sheridan and Moreland Streets, as well as Golf Village's property.

Two months later, the City moved to dissolve the preliminary injunction because "any alleged trespass has been resolved since the Court's order—more specifically, the City has filed a quick-take eminent domain action to acquire the necessary property for its public purpose—that warrant[s] the dissolution of the preliminary injunction." (Mot. to Dissolve Prelim. Inj., R. 34, Page ID #479.) Pursuant to Ohio Revised Code § 163.06, the City declared its intent to take immediate possession of Sheridan and Moreland Streets, as well as a portion of Golf Village's undeveloped property, and deposited a check with the clerk of court for the appraised value of the property appropriated. The City contended that, having fulfilled these statutory prerequisites, it was entitled to take immediate possession of the contested property. Golf Village opposed the motion, arguing that these quick-take procedures were not authorized under Ohio law and that the City had not declared its intention to take possession of the entirety of Moreland Street that was subject to the injunction. The district court granted the City's motion and stayed the case until the state quick-take action was resolved.

Nearly a year later, on November 7, 2019, Golf Village filed a motion for leave to file an amended complaint. Even though the state quick-take action had not been completed, Golf Village pointed to the Supreme Court's intervening decision in *Knick v. Township of Scott*, 139 S. Ct. 2162 (2019), which held that a property owner could bring a takings claim in federal court without first seeking just compensation in state court. While Golf Village acknowledged the pending quick-take action, it requested "leave to amend its Complaint to add a claim for a Fifth Amendment taking of the remainder of the private streets already at issue in this litigation," namely, "the remainder of Moreland Street or Market Street." (Mot. for Leave to File a First Am. Compl., R. 52, Page IDs ##728–29.) The district court granted the motion. The district court also lifted the stay based on Golf Village's assurance "that the state-court appropriation action and this action can proceed concurrently because the roads at issue in each case are different, removing the risk of inconsistent judgments." (11-19-19 Order, R. 54, Page ID #1156.)

Plaintiffs' amended complaint was filed on December 5, 2019. Defendants moved to dismiss. The district court granted Defendants' motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). The district court stated that "Plaintiffs' primary

issue is that the cost of maintaining [the unappropriated portion of Market and Moreland Streets] will continue to be borne by the Subarea G owners, even though the public and the City are benefitting from their use."  (9-24-20 Op. & Order, R. 87, Page ID #2230.)  The district court dismissed Plaintiffs' federal claims with prejudice and declined to exercise supplemental jurisdiction over the state trespass claim, dismissing it without prejudice.  Plaintiffs filed a timely notice of appeal.

## DISCUSSION

### Standard of Review

We review a district court's order granting a Rule 12(b)(6) motion to dismiss for failure to state a claim *de novo*.  *Solo v. United Parcel Serv. Co.*, 819 F.3d 788, 793 (6th Cir. 2016). "Thus, like the district court below, we must determine whether the complaint 'fail[s] to state a claim upon which relief can be granted,' in which case dismissal is warranted."  *Daunt v. Benson*, 999 F.3d 299, 307–08 (6th Cir. 2021) (alteration in original) (quoting Fed. R. Civ. P. 12(b)(6)).  We may affirm on any ground supported by the record, even if not relied upon by the district court.  *Allman v. Walmart, Inc.*, 967 F.3d 566, 575 (6th Cir. 2020).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  We construe the complaint in the light most favorable to the plaintiffs and draw all reasonable inferences in their favor.  *Cahoo v. SAS Analytics Inc.*, 912 F.3d 887, 897 (6th Cir. 2019). "While all the factual allegations of the complaint are accepted as true, 'we need not accept as true legal conclusions or unwarranted factual inferences.'"  *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (quoting *Gregory v. Shelby Cnty.*, 220 F.3d 433, 446 (6th Cir. 2000)).  The focus of our review is on "the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may

be taken into account." *Meyers v. Cincinnati Bd. of Educ.*, 983 F.3d 873, 880 (6th Cir. 2020) (quoting *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)).

## I.  Takings Claim

The district court properly dismissed Golf Village's takings claim for failure to state a claim.  Golf Village argues that this claim was erroneously dismissed without an opportunity to develop a factual record.  However, the takings claim was dismissible because the complaint did not "contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory." *Handy-Clay v. City of Memphis*, 695 F.3d 531, 538 (6th Cir. 2012) (quoting *Eidson v. Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007)).  Golf Village failed to plead factual content that the City appropriated a right of access for the public to Market and Moreland Streets.

### A.  Right to Exclude

There is no dispute that a property owner's right to exclude is "one of the most essential sticks in the bundle of rights that are commonly characterized as property." *Kaiser Aetna v. United States*, 444 U.S. 164, 176 (1979).

But as the Supreme Court's recent decision in *Cedar Point Nursery v. Hassid*, 141 S. Ct. 2063 (2021) illustrates, Golf Village must allege that the City authorized and licensed the public's use of Market and Moreland Streets and deprived it of its right to exclude in order to plead a taking.  In *Cedar Point Nursery*, the Supreme Court was presented with a challenge to a regulation that granted labor organizations a "right to take access" to the premises of an agricultural employer to solicit support for unionization. *Id.* at 2069.  The Court concluded that the access regulation at issue in that case did constitute a taking, and its analysis demonstrates why Golf Village has not adequately alleged that it was deprived of its right to exclude in this case.

The Supreme Court began by explaining that "physical appropriations constitute the 'clearest sort of taking,' and we assess them using a simple, *per se* rule: The government must pay for what it takes." *Id.* at 2071 (quoting *Palazzolo v. Rhode Island*, 533 U.S. 606, 617

(2001)).  It explained that the "essential question" for determining whether there has been a *per se* taking "is whether the government has physically taken property for itself or someone else—by whatever means . . . ."  *Id.* at 2072.

As in this case, *Cedar Point Nursery* presented a physical takings claim based on the right to exclude.  The Supreme Court concluded that:

> The access regulation appropriates a right to invade the growers' property and therefore constitutes a *per se* physical taking.  The regulation grants union organizers a right to physically enter and occupy the growers' land for three hours per day, 120 days per year.  Rather than restraining the growers' use of their own property, the regulation appropriates for the enjoyment of third parties the owners' right to exclude.

*Id.*

The Court's subsequent analysis confirmed that a taking requires that the government "appropriates a right" for itself or a third party.  *Id*.  The *Cedar Point Nursery* opinion began by describing the Court's earlier decision in *United States v. Causby*, 328 U.S. 256 (1946), which held that the government had effected a taking of a farmer's land by reason of low overflights by military planes because "a servitude ha[d] been imposed upon the land."  *Cedar Point Nursery*, 141 S. Ct. at 2073 (quoting *Causby*, 328 U.S. at 267); *see also Causby*, 328 U.S. at 267 (recognizing that "an easement was taken" for the planes).  The opinion then cited the Court's prior decision in *Kaiser Aetna*, which involved the government's attempt to impose a navigational servitude on a real-estate developer's marina as "similarly [holding] that the appropriation of an easement effected a taking . . . ."  *Cedar Point Nursery*, 141 S. Ct. at 2073 ("We reiterated that the appropriation of an easement constitutes a physical taking in *Nollan v. California Coastal Commission*[, 483 U.S. 825 (1987)].").

Thus, according to the Supreme Court, "[t]he upshot of this line of precedent is that government-authorized invasions of property—whether by plane, boat, cable, or beachcomber— are physical takings requiring just compensation.  As in those cases, the government here has appropriated a right of access . . . [and] appropriates a right to physically invade" private property.  *Id.* at 2074.  For that reason, the Court concluded that the California "take access" regulation constituted a physical *per se* taking.

The Supreme Court's analysis shows that Golf Village has failed to state a takings claim based on the right to exclude in this case. "[T]he government here has [not] appropriated a right of access" to the still-private portions of Market and Moreland Streets. *Id.* Golf Village does not allege that members of the public have "a right to physically invade" its property. *Id.* Instead, Golf Village's only relevant allegation in the amended complaint is that "[t]he City's appropriation will leave Plaintiffs without the means to limit use of Moreland and Market Streets while simultaneously causing damage—ultimately placing a great financial burden on them." (Am. Compl., R. 57, Page ID #1172.) As the district court found, "Plaintiffs fail to allege that they are no longer able to exclude the public from accessing the property or *how* Defendants' construction of the park diminishes that right." (9-24-20 Op. & Order, R. 87, Page ID #2233 (emphasis in original).) The City concedes that Golf Village "retain[s] the right to exclude individuals from [its] property by erecting barriers or otherwise enforcing [its] property rights." (Appellees' Br. 20.) Since the City does not require Golf Village to permit members of the public on Market and Moreland Streets, there is no "government-authorized physical invasion[] . . . requiring just compensation." *Cedar Point Nursery*, 141 S. Ct. at 2073; *see also Dolan v. City of Tigard*, 512 U.S. 374, 384 (1994) (observing that if a city required a property owner to dedicate land for public use "[w]ithout question . . . a taking would have occurred").

Golf Village responds that its right to exclude has been appropriated, despite the fact that the City does not challenge the right of Golf Village to erect barriers or otherwise exclude members of the public from Market and Moreland Streets. It argues that there has been a taking "even when specified action initiated by the landowner could terminate the taking." *Otay Mesa Prop., L.P. v. United States*, 670 F.3d 1358, 1367 (Fed. Cir. 2012). However, the cases that Golf Village cites in support of applying that principle in this case are inapposite.

In *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419 (1982), the Supreme Court concluded that a New York statute requiring the owner of a rental property to permit a cable television provider to install cable facilities on the property was a permanent physical occupation that constituted a taking. One of the cable company's responses to the takings claim was that, because the law only applied to buildings currently being used as rental property, "the landlord could avoid the requirements of [the statute] by ceasing to rent the building to tenants."

*Id.* at 439 n.17.  The Supreme Court rejected this argument, holding that "a landlord's ability to rent his property may not be conditioned on his forfeiting the right to compensation for a physical occupation."  *Id.*  Similarly, in *Otay Mesa*, the Federal Circuit held that a landowner was not required "to develop the entirety of its property" to eliminate an easement that United States Border Control had claimed allowed the government to place underground sensors in undeveloped parts of the landowners' land.  *Otay Mesa*, 670 F.3d at 1369.

In this case, the action by Golf Village that would terminate the alleged taking is to exercise its right to exclude.  For example, Golf Village could build a gate at the entrance to Market Street to ensure that everyone who drives on the private streets is an invited guest.  Or it could build a curb at the intersection of Moreland and Sheridan Streets that would make it impossible for cars to use the private streets to access the park, thereby reducing the likelihood that members of the public would damage Market and Moreland.  Golf Village's assertion on appeal that "[t]he installation of barriers or gates also would be inconsistent with Golf Village's intended use of the properties and its ability to have the private streets available for Golf Village's invitees," is not supported by any factual allegations.  (Appellants' Br. 28 n.6.)  Under Golf Village's analysis, any time the government took an action that made a property owner's property more popular, regardless of what actions the property owner could take, there would be a taking. That proposition is not supported by either *Loretto* or *Otay Mesa*.

Golf Village further claims that the increased traffic to access the park, which will lead to additional maintenance costs, was the intended effect of the City's actions and therefore constitutes a taking.  As the Supreme Court recognized in *Loretto*, "this Court has consistently distinguished between flooding cases involving a permanent physical occupation, on the one hand, and cases involving a more temporary invasion, or government action outside the owner's property that causes consequential damages within, on the other.  A taking has always been found only in the former situation." *Loretto*, 458 U.S. at 428.[2]  In the course of this argument, Golf Village emphasizes the Federal Circuit's decision in *Ridge Line, Inc. v. United States*,

---

[2]In the amended complaint, Golf Village only alleged that the City's actions "will cause damage to the remainder of the Streets by forcing vast amounts of additional traffic on them," not that such damage had already taken place.  (Am. Compl., R. 57, Page ID #1172.)

346 F.3d 1346 (Fed. Cir. 2003).[3] In *Ridge Line*, the Federal Circuit set out a two-part test for distinguishing unconstitutional takings from governmental torts. "First, a property loss compensable as a taking only results when the government intends to invade a protected property interest or the asserted invasion is the direct, natural, or probable result of an authorized activity and not the incidental or consequential injury inflicted by the action." *Id.* at 1355 (internal quotation and citation omitted). This is similar to the rule that *Loretto* outlined for distinguishing between "permanent physical occupation [takings]" and "consequential damages [torts]." *Loretto*, 458 U.S. at 428.

In the amended complaint, Golf Village presented the following mock-up, which had been produced by the City, from which it can reasonably be inferred that members of the public are using an unappropriated portion of Moreland Street to access the park:



(Am. Comp., R. 57, Page ID #1172.) The arrow in the above image is pointing to Moreland Street and shows cars appearing to approach the park. The City argues that the static image does not show cars moving at all, let alone to the park, which is, of course, correct. But on a motion to dismiss, we construe the complaint in the light most favorable to the plaintiffs and draw all reasonable inference in their favor, and this image provides enough for the Court to reasonably

---

[3]Prior to the Supreme Court's 2019 decision in *Knick*, which overturned the requirement that a plaintiff could not bring a takings claim in federal court until a state court had denied a claim for just compensation under state law, there were not many takings claims in federal court outside of the Federal Circuit, which adjudicates takings claims against the federal government. *See Knick*, 139 S. Ct. at 2167 ("The takings plaintiff thus finds himself in a Catch-22: He cannot go to federal court without going to state court first; but if he goes to state court and loses, his claim will be barred in federal court. The federal claim dies aborning."). Accordingly, much of both parties' briefing focuses on Federal Circuit takings standards that are not binding on this Court. *See Bowling Green v. Martin Land Dev. Co.*, 561 F.3d 556, 560 (6th Cir. 2009).

infer that the City intended for members of the public to access the park via Golf Village's private streets. *See Keene Grp., Inc. v. City of Cincinnati*, 998 F.3d 306, 310 (6th Cir. 2021).

However, even if the first prong of *Ridge Line/Loretto* was met and the increased public traffic on Market and Moreland Streets was intended by the City, Golf Village fails to establish a takings claim under *Ridge Line* for the same reasons it fails to establish a takings claim under *Cedar Point Nursery*—the City has not appropriated Golf Village's right to exclude. *Cedar Point Nursery*, 141 S. Ct. at 2074. In *Ridge Line*, the Federal Circuit described this requirement as the second step of the takings inquiry and recognized that

> Even where the effects of the government action are predictable, to constitute a taking, an invasion must appropriate a benefit to the government at the expense of the property owner, or at least preempt the owners [sic] right to enjoy his property for an extended period of time, rather than merely inflict an injury that reduces its value.

*Ridge Line*, 346 F.3d at 1356. Accordingly, even under the cases it cites, Golf Village has failed to allege a violation of the right to exclude because it has not alleged that the City appropriated, for members of the public, a right of access to its property.

Nor does the reasoning in the Eleventh Circuit's decision in *Chmielewski v. City of St. Pete Beach*, 890 F.3d 942 (11th Cir. 2018), which was repeatedly raised by Golf Village in its briefing and at oral argument, persuade us that Golf Village's right to exclude has been violated in this case. In *Chmielewski*, "the jury found that the City encouraged and invited access by the general public, causing a seizure of the Chmielewskis' residential property and a taking of their beach parcel." *Id.* at 945. The Eleventh Circuit affirmed. However, in that case, the city not only "encouraged and invited access," but "declined to enforce its trespassing laws" when informed that unauthorized persons were using the plaintiffs' property and, in fact, "threatened to arrest" one of the plaintiffs for attempting to enforce his right to exclude. *Id.* at 945, 947. By these actions, the city in *Chmielewski* effectively appropriated the plaintiffs' private property by giving the public "a permanent and continuous right to pass to and fro, so that the real property may continuously be traversed." *Id.* at 949 (quoting *Nollan*, 483 U.S. at 832). Here, unlike in *Chmielewski*, there is no allegation that the City actively encouraged members of the public to

use Golf Village's private roads or prevented Golf Village from excluding the public from Market and Moreland Streets.

**B. Right to Use and Enjoy Property**

Golf Village also argues that the City is liable for a taking because the increased traffic will result in higher maintenance costs for the private roads as well as make it impossible to maintain a private commercial community. Golf Village claims these injuries violate its right to use and enjoy property. However, Golf Village's takings claim, premised on the City's appropriation of its right to use and enjoy property, fails for similar reasons as the right to exclude claim did—the City never appropriated a right of access for members of the public.

In all the cases from sundry federal courts cited by Golf Village in support of its right to use and enjoy takings claim, *United States v. Causby*, 328 U.S. 256 (1946), *Brown v. United States*, 73 F.3d 1100 (Fed. Cir. 1996), *Hendler v. United States*, 952 F.2d 1364 (Fed. Cir. 1991), *Arill v. Maiz*, 992 F. Supp. 112 (D.P.R. 1998), and *Kingsport Horizontal Property Regime v. United States*, 46 Fed. Cl. 691 (2000), the government authorized actionable interference in the property owner's right to use and enjoy property, which is simply not true here. Those cases are thus inapplicable for the reasons explained above. For example, in *Causby*, 328 U.S. at 261–62, and *Brown*, 73 F.3d at 1106, the Supreme Court and Federal Circuit, respectively, found that interference with the right to use and enjoy property caused by a military overflight easement taken by the government could give rise to Takings Clause liability. In *Hendler*, 952 F.2d at 1378, "the Government behaved as if it had acquired an easement" to build wells to monitor pollution on the plaintiffs' property. And in *Kingsport*, 46 Fed. Cl. at 693, and *Arill*, 992 F. Supp. at 117, the courts held that the government could be liable for a taking due to traffic that interfered with the plaintiffs' right to use and enjoy property because the public was proceeding along a public waterway, as in *Kingsport*, or a business was operating according to a government license, as in *Arill*.

The cases referenced by Golf Village do not support its claim that its right to use and enjoy property has been violated because the government has claimed no easement over Market and Moreland Streets, and there are no material allegations that Golf Village cannot use and

enjoy the private roads to the extent that it did prior to the City's actions challenged in this case. Golf Village has not alleged that the City "appropriate[d] for the enjoyment of third parties the owners' right" to use and enjoy Market and Moreland Streets. *Cedar Point Nursery*, 141 S. Ct. at 2072; *see Ridge Line*, 346 F.3d at 1356 (concluding that "to constitute a taking, an invasion must appropriate a benefit to the government at the expense of the property owner, or at least preempt the owners [sic] right to enjoy his property for an extended period of time"). The district court correctly dismissed the takings claim based on the lack of interference with the right to use and enjoy.

### C.  Construction Crew Claims

Golf Village's primary argument on appeal concerns the increased traffic by members of the public on Market and Moreland Streets. However, it also appealed the district court's determination that the unauthorized entry by the City's construction crews onto the private roads and Golf Village's property, as well as the damaging of a curb before the initiation of the state quick-take action, constituted torts rather than takings.

Golf Village has not demonstrated any error in the district court's conclusion that the temporary invasion of the property by the City's construction crews was not a taking. Golf Village's citations to *Skip Kirchdorfer, Inc. v. United States*, 6 F.3d 1573 (Fed. Cir. 1993), and *State ex rel. Blank v. Beasley*, 903 N.E.2d 1196 (Ohio 2009), do not support reversal. In *Skip Kirchdorfer*, the United States Navy was found to have effected a taking by its control of access to the plaintiff's warehouse. *Skip Kirchdorfer*, 6 F.3d at 1582. Similarly, the Ohio Supreme Court's decision in *Beasley* does not support a finding that the City's construction crews took Golf Village's property, rather than committed the tort of trespass. In *Beasley*, Ohio hired a private contractor to expand and improve a state highway. The contractor parked heavy construction equipment on private property, impairing "access to and use of [plaintiffs'] own properties and causing substantial physical damage thereto." *Beasley*, 903 N.E. at 1203. Similar allegations that the construction equipment or contractors limited access to Golf Village's property not subject to the quick-take appropriation are absent from Golf Village's complaint. As the Supreme Court recognized in *Loretto*, 458 U.S. at 428, such a "temporary invasion" does not constitute a taking.

## II.  Procedural Due Process Claim

We affirm the district court's dismissal of Golf Village's procedural due process claim for the same reasons we rejected the takings challenges.  The procedural due process claim is based on the same rights to exclude and to use and enjoy property that we found could not support a takings claim.  "To establish a procedural due process violation, Plaintiffs must show (1) that they have been deprived of a cognizable [property] interest, and (2) that such deprivation occurred without adequate procedural protections."  *Schulkers v. Kammer*, 955 F.3d 520, 545 (6th Cir. 2020).  While there is no dispute that the right to exclude and the right to use and enjoy property are constitutionally protected property interests, Golf Village has not adequately alleged that it was deprived of those rights for the reasons explained above.  Accordingly, Plaintiffs' procedural due process claim was also properly dismissed.

## III.  Dismissal of Federal Claims with Prejudice

Golf Village appeals the dismissal of its takings and procedural due process claims with prejudice and argues that the district court should have granted leave to amend.  Golf Village contends that because the district court did not explain why the federal claims were dismissed with prejudice, as opposed to without, Golf Village should be given another chance to plead its claims.

We have held that when a district court does not "explain why it withheld leave to amend," abuse of discretion governs our review of the district court's decision.  *Pulte Homes, Inc. v. Laborers' Int'l Union of N. Am.*, 648 F.3d 295, 305 (6th Cir. 2011).  We have also held that "if a party does not file a motion to amend or a proposed amended complaint, it is not an abuse of discretion for the district court to dismiss the claims with prejudice."  *Crosby v. Twitter, Inc.*, 921 F.3d 617, 627–28 (6th Cir. 2019) (quoting *CNH Am. LLC v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. (UAW)*, 645 F.3d 785, 795 (6th Cir. 2011)).  Golf Village had already amended the complaint, failed to move for further leave to amend, and did not move to alter or amend the district court's judgment.  Under identical circumstances, we have found that a district court did not abuse its discretion in dismissing a complaint with prejudice.  *Pulte Homes*, 648 F.3d at 305.  Golf Village provides no reason why the same result

is not appropriate here.   We determine that the district court acted within its discretion by dismissing the federal claims in the amended complaint with prejudice.

## IV.  Declining Supplemental Jurisdiction

Golf Village claims that the district court should have retained jurisdiction over the state trespass action even after dismissing the federal claims.  A district court's decision to decline supplemental jurisdiction over state law claims under 28 U.S.C. § 1367 is reviewed for abuse of discretion.  *Gamel v. City of Cincinnati*, 625 F.3d 949, 951 (6th Cir. 2010).  We have described as a "fundamental principle" that "declining to exercise supplemental jurisdiction over an action with no remaining federal claims is not an abuse of discretion."  *Southard v. Newcomb Oil Co.*, — F.4th —, 2021 WL 3378933, at *1 (6th Cir. Aug. 4, 2021).  Accordingly, we affirm the district court's decision not to retain jurisdiction over Golf Village's trespass action after it had dismissed the § 1983 claims.

## CONCLUSION

For the reasons stated above, we **AFFIRM** the judgment of the district court.