NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0313n.06

No. 21-1739

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Aug 02, 2022
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| TERRANCE BAR, | ) | |
| Plaintiff-Appellant, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT |
| v. | ) ) | COURT FOR THE EASTERN DISTRICT OF MICHIGAN |
| KALITTA CHARTERS II, LLC, | ) ) | |
| Defendant-Appellee. | ) | OPINION |
| | ) ) | |

Before: WHITE, BUSH, and READLER, Circuit Judges.

**HELENE N. WHITE, Circuit Judge.** Plaintiff-Appellant Terrance Bar appeals the dismissal of his complaint alleging a hostile work environment under Title VII of the Civil Rights Act of 1964 based on sexual harassment and retaliation for opposing that harassment. He argues that the district court improperly required him to make out a prima facie case for his hostile-work-environment claim on a motion to dismiss and that, in any case, he made the required showing, and did so for his retaliation claim as well. We **AFFIRM** in part, **REVERSE** in part, and **REMAND** for further proceedings.

**I.**

Bar was employed as a pilot by Defendant-Appellee Kalitta Charters II, LLC ("Kalitta"), an "on demand" charter airline company, R.23, PID 156, until his employment was terminated on August 21, 2020. Bar alleges that in December 2019, Check Airman[1] Greg DeBourge "made

---

[1] A check airman is "a person who is qualified to conduct flight checks in an aircraft, in a flight simulator, or in a flight training device for a particular type aircraft." 14 C.F.R. § 135.337(a)(1).

dist[ur]bing and intimidating comments on [a] soc[i]al media platform." R.17, PID 107. He further alleges that on February 20, 2020, DeBourge made "a disturbing sexual suggestive simulation act" during a meeting at a hotel in Miami, Florida, at which Bar and two female colleagues were present. *Id.* The next day, while Bar was participating in a flight simulator training session, DeBourge "showed my Simulator Partner Brandon Kearns and I . . . a homosexual pornographic video on his cell phone." *Id.*

Bar alleges that after DeBourge showed him the video, he was unable to continue the training session and left the facility. He first called the Director of Training, Darrell Coleman, to complain about what had just happened, but Coleman did not pick up, so Bar "left him a voice message to please return my call." *Id.* Bar next called Chief Pilot Mike Geadtke and explained to him what had happened. Geadtke informed Bar that he was just across the street and that he would speak to him shortly. When Geadtke arrived at the training facility, Bar again explained what DeBourge had done. Bar alleges that Geadtke "could see how visibly upset [he] was," gave him his car keys, and told him to go back to his hotel room. *Id.* These allegations form the basis of Bar's claim alleging a hostile work environment based on sexual harassment.

Bar also alleges that Kalitta retaliated against him for reporting the incident involving DeBourge. For example, Kalitta began requiring him to report to the Cincinnati/Northern Kentucky International Airport, which is a four-hour drive from his house, despite the fact that since March 2018, he had been working out of the Willow Run Airport in Ypsilanti, Michigan, which is a forty-four minute drive. Bar also contends that when he was scheduled to fly, he would typically fly out of Cincinnati to a different city, stay at a hotel for the day, and then fly back to Cincinnati at night. He would then sleep on a reclining chair in the crew room at the Cincinnati airport and perform the same routine the next morning. Bar alleges that Kalitta paid for some

captains to stay in hotels but did not do the same for him. Bar further alleges that when he was scheduled to fly, he would, on occasion, arrive at the airport only to discover "there was no aircraft or captain for me." *Id.*, PID 110.

Bar contends that Kalitta's acts of retaliation did not stop there. On June 5, 2020, he was flying with Captain Buchanan out of the Rochester Airport in New York when the aircraft experienced a malfunction during takeoff and veered off the runway. Bar alleges that although he was "performing [his] duties as trained," Buchanan "did not perform the standard operating procedures." *Id.* After this incident, both pilots were put through retraining. Buchanan failed his simulator check ride and was demoted to First Officer and assigned to fly with a regular line pilot. Bar, on the other hand, passed his simulator check ride and "was put through Recurrent Training with three different Check Airmen." *Id.* Bar alleges that after the last check ride, a check airman named Rob Numbers "used pretext on a[n] [i]nstructor comment form," after which Bar was called into the Chief Pilot's office and fired. *Id.* Finally, Barr alleges that Kalitta then denied his request for unemployment benefits "due to [g]ross [m]isconduct," but that the Michigan Unemployment Insurance Agency later awarded him unemployment benefits "due to [a] lack of evidence." *Id.*, PID 107.

After his employment was terminated, Bar, acting pro se, filed the instant complaint[2] asserting claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2000e-17, for hostile work environment based on sexual harassment and for retaliation. Kalitta moved to dismiss the complaint, arguing that Bar failed to allege sufficient facts to state a plausible claim for relief. The district court granted the motion and this appeal followed. After briefing in this

---

[2] Bar filed his original pro se complaint in June 2021, which Kalitta moved to dismiss. Bar then filed an amended pro se complaint—the operative complaint—in August 2021. We refer to the operative complaint as "the complaint."

matter was complete, we asked the parties for supplemental briefing on the question whether Bar alleged sufficient factual content regarding employer liability for the hostile-work-environment claim to survive a motion to dismiss.

## II.

"We review a district court's order granting a Rule 12(b)(6) motion to dismiss for failure to state a claim *de novo*." *Golf Vill. N., LLC v. City of Powell*, 14 F.4th 611, 617 (6th Cir. 2021). "We construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded factual allegations as true, and examine whether the complaint contains sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Nolan v. Detroit Edison Co.*, 991 F.3d 697, 707 (6th Cir. 2021) (internal quotation marks omitted). Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

Nevertheless, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To avoid dismissal for failure to state a claim, a plaintiff must plead sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

We hold pro se pleadings to "less stringent standards than formal pleadings drafted by lawyers" and construe them liberally. *Luis v. Zang*, 833 F.3d 619, 626 (6th Cir. 2016) (quoting *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011)). But "basic pleading essentials" still apply, *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989), and we have no duty to "create a claim which [the pro se plaintiff] has not spelled out in his pleading." *Clark v. Nat'l Travelers Life Ins. Co.*,

518 F.2d 1167, 1169 (6th Cir. 1975) (per curiam) (quoting *Case v. State Farm Mut. Auto. Ins. Co.*, 294 F.2d 676, 678 (5th Cir. 1961)).

## A.

Bar first argues that the district court erred in dismissing his hostile-work-environment claim because it improperly required him to establish a prima facie case. He contends that his complaint provides adequate notice of his claim and that, in any event, he has made a prima facie showing.

Title VII provides that "[i]t shall be an unlawful employment practice for an employer . . . to discriminate against any individual . . . because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. 2000e-2(a)(1); *see also Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). This prohibition "includes requiring people to work in a discriminatorily hostile or abusive environment." *Harris*, 510 U.S. at 21 (citing *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 64 (1986). "[D]iscrimination based on sex" that "create[s] a hostile or abusive work environment" is actionable under Title VII. *Meritor*, 477 U.S. at 66. And "Title VII covers hostile work environment claims based on same-sex harassment." *Vickers v. Fairfield Med. Ctr.*, 453 F.3d 757, 765 (6th Cir. 2006) (citing *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 79 (1998)). "[E]mployers are not automatically liable for sexual harassment perpetrated by their employees." *Gallagher v. C.H. Robinson Worldwide, Inc.*, 567 F.3d 263, 274 (6th Cir. 2009) (quoting *Petrosino v. Bell Atl.*, 385 F.3d 210, 225 (2d Cir. 2004)). "In the case of a harassing supervisor, the employer is vicariously liable for the hostile work environment." *Doe v. City of Detroit*, 3 F.4th 294, 301 (6th Cir. 2021). "But when committed by a coworker, the employer is liable only 'if it knew or should have known of the charged sexual harassment and failed to implement prompt and

appropriate corrective action.'" *Id.* (quoting *Clark v. United Parcel Serv., Inc.*, 400 F.3d 341, 348 (6th Cir. 2005)).

A Title VII plaintiff need not make a prima facie showing to survive a motion to dismiss. In *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002), the Supreme Court held that "it is not appropriate to require a plaintiff to plead facts establishing a prima facie case because the *McDonnell Douglas* [burden-shifting] framework does not apply in every employment discrimination case." *Id.* at 511 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). The Court reasoned that a plaintiff may, in some cases, uncover direct evidence of discrimination, obviating the need to establish a prima facie case. *Id.* The Court further explained, "it may be difficult to define the precise formulation of the required prima facie case in a particular case" before "discovery has unearthed relevant facts and evidence." *Id.* at 512.

*Swierkiewicz*'s holding remains good law after the Supreme Court's decisions in *Twombly* and *Iqbal*, *see Keys v. Humana, Inc.*, 684 F.3d 605, 609 (6th Cir. 2012), and a complaint "satisfies the pleading requirements of [Rule] 8(a)(2)" so long as it "provides an adequate factual basis for a Title VII discrimination claim." *Serrano v. Cintas Corp.*, 699 F.3d 884, 897 (6th Cir. 2012). "[D]etailed factual allegations" are not necessary; a plaintiff need only "allege sufficient 'factual content' from which a court, informed by its 'judicial experience and common sense,' could 'draw the reasonable inference'" that an employer violated Title VII. *Keys*, 684 F.3d at 610 (quoting *Iqbal*, 556 U.S. at 678, 679).

The district court acknowledged that Bar was not required to make out a prima facie case of a hostile work environment at the pleadings stage, but found that dismissal of the complaint was warranted nevertheless. Although it had "no doubt" that Bar found DeBourge's conduct subjectively offensive, the district court determined that the three, "vaguely allege[d]" incidents of

harassment "fall far short of the objectively severe or pervasive conduct" necessary to state a hostile-work-environment claim. R.23, PID 168–70. Because we conclude that Bar's hostile-work-environment claim is deficient for a different reason, we need not decide whether the district court's reasoning was correct. *See Golf Vill. N.*, 14 F.4th at 617 (noting that we may affirm a Rule 12(b)(6) dismissal "on any ground supported by the record, even if not relied upon by the district court.").

Bar's claim falls short because he failed to allege sufficient facts establishing that Kalitta is liable as an employer for DeBourge's conduct. He asserts that under a liberal reading of his complaint, he adequately alleged that DeBourge was his supervisor because he alleged that DeBourge was a check airman and that one of the incidents of harassment occurred while he was in a flight simulator training session conducted by DeBourge. We disagree. "[A]n employee is a 'supervisor' for purposes of vicarious liability under Title VII if he or she is empowered by the employer to take tangible employment actions against the victim." *Vance v. Ball State Univ.*, 570 U.S. 421, 424 (2013). Tangible employment actions are those that result in a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Id.* at 431 (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)). The fact that a check airman is someone who "is qualified to conduct flight checks in an aircraft, in a flight simulator, or in a flight training device for a particular type aircraft," 14 C.F.R. § 135.337(a)(1), tells us nothing about that person's ability to hire, fire, or otherwise take tangible employment actions against another employee.

Similarly, that DeBourge was training Bar during one of the alleged incidents of harassment does not support an inference that DeBourge was acting in a supervisory role or that

he "had Mr. Bar's entire career in his hands." Appellant Supp. Br. at 5. Indeed, Bar's allegation that he was fired after being called into the Chief Pilot's office some months later suggests that supervisory authority over Bar was with employees other than DeBourge and those of similar rank. To the extent Bar's allegation regarding Check Airman Rob Numbers's purportedly pretextual evaluation could be read to imply that check airmen have authority to cause tangible employment consequences to pilots such as Bar, we reiterate that an employee is not a supervisor unless he is "empowered by the employer to take tangible employment actions against the victim." *Vance*, 570 U.S. at 424. There is no indication that DeBourge specifically had that authority over Bar here. And the mere fact that he might have been empowered "to conduct performance evaluations does not turn [DeBourge] into [Bar's] supervisor." *E.E.O.C. v. AutoZone, Inc.*, 692 F. App'x 280, 283–84 (6th Cir. 2017) (per curiam).

With vicarious liability off the table, Kalitta may only be found liable for DeBourge's conduct "if it knew or should have known of the charged sexual harassment and failed to implement prompt and appropriate corrective action." *City of Detroit*, 3 F.4th at 301 (quoting *Clark*, 400 F.3d at 348). Under the coworker theory of liability, an employer is liable if its "response to a coworker's harassment . . . 'manifests indifference or unreasonableness in light of the facts the employer knew or should have known.'" *Id.* (quoting *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 338 (6th Cir. 2008)) (alteration omitted). Here, although Bar adequately alleged that Kalitta knew or should have known about the charged harassment because he reported the pornography incident to Chief Pilot Geadtke, his complaint provides no basis to conclude that Kalitta "failed to implement prompt and appropriate corrective action." *Id.* Bar alleges only the three incidents of sexual harassment—the social-media comments, sexually suggestive simulation act, and pornography—all preceding his complaint to Geadtke. The complaint does not describe

any further misconduct by DeBourge, and it appears from the complaint that after Bar reported the pornography incident to Geadtke, the alleged harassment stopped altogether.

Because Bar's complaint does not support an "inference that [Kalitta] is liable for the misconduct alleged," *Iqbal*, 556 U.S. at 678, the district court did not err in dismissing Bar's hostile-work-environment claim.

**B.**

Next, Bar argues that the district court erred in dismissing his Title VII retaliation claim because he established a prima facie case of retaliation. Because the district court applied the wrong framework in assessing the sufficiency of Bar's complaint, we reverse.

In dismissing Bar's retaliation claim, the district court required Bar to allege the prima facie elements of a retaliation claim under the *McDonnell Douglas* burden-shifting framework, specifically that: "(1) he engaged in Title VII protected activity; (2) the employer knew that he engaged in that protected activity; (3) the employer subsequently took an adverse employment action against him; and (4) the adverse action was causally connected to the protected activity." R.23, PID 175 (citing *Taylor v. Geithner*, 703 F.3d 328, 336 (6th Cir. 2013)). The district court ultimately concluded that Bar failed to state a claim because he did not adequately allege that he engaged in protected activity, and because there was an insufficient causal connection between his complaint about the pornography incident—the only incident for which he allegedly made a complaint—and the termination of his employment. Specifically, the district court held that Bar did not sufficiently allege that he engaged in protected activity because he could not have had a "reasonable, good faith belief" that the incident involving the pornographic video constituted unlawful sexual harassment. *Id.*, PID 177. The district court further found that the only alleged incident of retaliation that constituted an adverse employment action was Bar's termination. In the

district court's view, Bar's termination lacked a sufficient causal connection to his complaint about the pornographic video because Bar himself alleged that he was terminated because Check Airman Rob Numbers made a comment on the instructor form after one of Bar's recurrent training sessions. The district court also concluded that the temporal proximity of the two events was not "significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation." *Id.*, PID 185.

But as the district court correctly noted earlier in its opinion, the *McDonnell Douglas* framework is "an evidentiary standard, not a pleading requirement," and the "ordinary rules for assessing the sufficiency of a complaint apply" on a motion to dismiss. *Swierkiewicz*, 534 U.S. at 510–11. By requiring Bar to establish a prima facie case of retaliation, "the district court required [Bar] to allege too much at the pleading stage." *Primm v. Dep't of Hum. Servs.*, No. 16-6837, 2017 WL 10646487, at *2 (6th Cir. Aug. 17, 2017) (order). Instead, all that was required was that Bar provide an "adequate factual basis" for his retaliation claim. *See Serrano*, 699 F.3d at 897. Bar did so here.

"Title VII's antiretaliation provision forbids employer actions that 'discriminate against' an employee (or job applicant) because he has 'opposed' a practice that Title VII forbids or has 'made a charge, testified, assisted, or participated in' a Title VII 'investigation, proceeding, or hearing.'" *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 59 (2006) (quoting 42 U.S.C. § 2000e-3(a)). Title VII's "opposition clause" protects "complaints to management and less formal protests of discriminatory employment actions." *E.E.O.C. v. New Breed Logistics*, 783 F.3d 1057, 1067 (6th Cir. 2015) (quoting *Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2014)).

Bar alleges that after DeBourge made him watch the pornographic video, he contacted Chief Pilot Mike Geadtke "and explained to him what just happened." R.17, PID 107. He further alleges that after he reported the incident, Kalitta engaged in the following acts of retaliation: (1) requiring him to report to a duty station four hours away from his house, when his previous one was only forty-four minutes away; (2) causing him to sleep on a reclining chair in the crew room at the airport between shifts instead of paying for a hotel room, as it did for some pilots; (3) scheduling him to fly when no aircraft or co-pilot was available; (4) terminating him after Check Airman Rob Numbers made pretextual statements on an instructor comment form; and (5) denying his unemployment benefits due to alleged "[g]ross [m]isconduct." R.17, PID 107.

These allegations provide "sufficient factual content" from which this court, informed by our "judicial experience and common sense, could draw the reasonable inference" that Kalitta retaliated against Bar for complaining about DeBourge's conduct. *See Keys*, 684 F.3d at 610 (internal quotation marks omitted). And the acts alleged were sufficiently severe that they "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern*, 548 U.S. at 68 (internal quotation marks omitted). Accordingly, we reverse the dismissal of Bar's retaliation claim.

**III.**

For the reasons set forth above, we **AFFIRM** in part, **REVERSE** in part, and **REMAND** for further proceedings.